**Emil L. POERTNER, Respondent,**

v.

**Jane A. HESS, as the Administrator of the State Courts of Missouri, et al., Appellants.**

**No. 64069.**

Supreme Court of Missouri,
En Banc.

Feb. 23, 1983.

Rehearing Denied March 29, 1983.

754

Cullen Coil, Robert J. Swift, Jr., Jefferson City, for appellants.

John Ashcroft, Atty. Gen., Steven H. Akre, Asst. Atty. Gen., Jefferson City, for respondent.

PER CURIAM.

Appellants appeal from the trial court's decision ordering the secretary of state to certify that respondent became a circuit judge of the Twentieth Judicial Circuit on January 2, 1979, and declaring that from that date respondent is entitled to the salary of a circuit judge. Whether respondent is to be a circuit judge, as he claims, or an associate circuit judge, as appellants contend, depends upon the population of Franklin County on January 2, 1979, the effective date of the 1976 amendments to art. V of the Missouri Constitution. The Missouri Court of Appeals, Western District, transferred the case to this Court prior to opinion because this Court has exclusive appellate jurisdiction in cases involving the title to a state office. Mo. Const. art. V, § 3. The judgment of the circuit court is reversed.

The 1976 amendments to art. V abolished the magistrate and probate courts and provided that those courts were to be divisions of the Circuit Court. *Id.* art. V, § 27(2)(a)–(b). Upon the effective date of the amendments, magistrate judges became associate circuit judges and probate judges became either circuit or associate circuit judges. *Id.* art. V, § 27(4)(a), –(c). Whether a probate judge became a circuit judge or an associate circuit judge was governed by the provisions of art. V, § 27(4)(a), which provides:

In 1978, all probate judges except those selected under the nonpartisan selection

of judges plan shall be elected as provided by law. *On the effective date of this article the probate judge of the city of St. Louis and the probate judges of all first class counties and all second class counties with a population of over sixty-five thousand shall become circuit judges of their respective circuits* and thereafter shall be selected or elected from the circuit as in the case of other circuit judges and be entitled to the same compensation as provided by law for circuit judges and be entitled to the same compensation as provided by law for circuit judges at the time of the effective date of this article until changed by law, and shall have the same powers and jurisdiction as judges of the circuit courts. Each judge who served as probate judge and who is in office on the effective date of this article in such city and counties shall continue to serve in the capacity of judge of the probate division of the circuit court until his successor is selected and qualified, provided that with his consent any circuit judge or associate circuit judge in the circuit at his request may hear, try and dispose of any matter, case or classes of cases assigned to him by such judge of the probate division, and such judge of the probate division with his consent, may hear, try and determine any case within the jurisdiction of the circuit court. *On the effective date of this article the probate judges of counties with a population of sixty-five thousand or less shall become associate circuit judges of their respective circuits* and thereafter shall be selected or elected from the county as in the case of other associate circuit judges and shall be entitled to the same compensation as that to which they were entitled on the effective date of this article until changed by law.

(Emphasis added.)

Respondent was elected probate judge of Franklin County, a second class county,[1] at the general election in November 1978, and he was sworn into office on January 1, 1979. The next day respondent became either a circuit judge or an associate circuit judge, depending upon the population of Franklin County. The parties have stipulated that according to the 1970 United States decennial census Franklin County had a population of fewer than 65,000 persons. The uncontradicted evidence at trial was that based upon the most accurate expert estimates available, Franklin County had more than 65,000 inhabitants on January 2, 1979.

The bone of contention between the parties is whether the population of Franklin County on the date in question is to be determined by reference to the last previous United States decennial census, that of 1970, or by some other method. Appellants argue that § 1.100, RSMo 1978,[2] requires that population be determined by reference to the last previous decennial census. That section provides in relevant part that

> [t]he population of any political subdivision of the state for the purpose of representation *or other matters* including the ascertainment of the salary of any county officer for any year or for the amount of fees he may retain or the amount he is allowed to pay for deputies and assistants is determined on the basis of the last previous decennial census of the United States.

§ 1.100(1) (emphasis added). Respondent, for a number of reasons, contends that § 1.100 is inapplicable.

We reject appellants' contention that § 1.100 mandates a method of constitutional construction. In our recent decision in *State Tax Commission v. Administrative Hearing Commission,* 641 S.W.2d 69 (Mo. banc 1982), we reaffirmed our commitment to the longstanding principle that " '[i]t is emphatically the province and duty of the judicial department to say what the law is.' " *Id.* at 77 (quoting *Marbury v. Madi-*

---

1. The parties are in agreement that Franklin County is a second class county and was so at the time in question. *See* State of Missouri, *1981–1982 Official Manual* 1163 (1981); State

of Missouri, *1979–1980 Official Manual* 1171 (1979).

2. All statutory references are to RSMo 1978 unless otherwise indicated.

*son,* 1 Cranch (5 U.S.) 137, 177 (1803)). It would be inconsistent with that principle to hold that § 1.100 compels the result appellants seek, for such a holding would mean that the legislature could statutorily interpret the language of the Constitution. Constitutional interpretation is a function of the judicial, and not the legislative, branch.

That is not to say that § 1.100 is without significance. Although that section does not directly resolve the issue presented, it is a factor to be considered in ascertaining the intent of those who drafted and adopted the 1976 amendments to art. V. "In determining the meaning of a constitutional provision the court must first undertake to ascribe to the words the meaning which the people understood them to have when the provision was adopted." *Boone County Court v. State,* 631 S.W.2d 321, 324 (Mo. banc 1982). The "intent of the amendment's drafters" is also "influential." *Id.* *See also McDermott v. Nations,* 580 S.W.2d 249, 253 (Mo. banc), *cert. denied,* 444 U.S. 901, 100 S.Ct. 213, 62 L.Ed.2d 138, *cert. dismissed,* 444 U.S. 958, 100 S.Ct. 441, 62 L.Ed.2d 138 (1979). Language must not be construed in the abstract but should be defined in light of the construction that those who drafted and adopted the provision must have believed would be placed upon it. It is with these principles in mind that § 1.100 becomes important.

A myriad of state and local classifications and governmental functions are based upon population. It therefore is necessary that there be a stable and accurate source of population data. Section 1.100 reflects the policy of the legislature that such data should be provided by the last previous United States decennial census. That section and its precursors have been a part of Missouri law since 1885, when the legislature abolished the state census and provided that "[a]ll representation or other matters heretofore or now based on the state census

shall be based on the United States census of this state." Act of Apr. 3, 1885, 1885 Mo. Laws 46, 46. The census referred to in that statute was necessarily the decennial census, because until Congress acted in 1976 to authorize an interim census, *see* Act of Oct. 17, 1976, Pub.L. No. 94–521, sec. 7, § 141(d), 90 Stat. 2459, 2461–62 (codified at 13 U.S.C. § 141(d) (1976)), the only population census required by federal law was the decennial census mandated by U.S. Const. art. I, § 2, para. 3, *see* S.Rep. No. 1256, 94th Cong., 2d Sess. 2, *reprinted in* 1976 U.S.Code Cong. & Ad.News 5463, 5464. The legislature later passed new legislation that expressly employed the term "decennial census,"[3] and the use of that term continues today in § 1.100. Nevertheless because prior to 1976 any reference to the United States census could mean only the decennial census, it is clear that for nearly a century the legislative policy of this state has been to rely upon the United States decennial census.

That fact is highly significant in the present case. The people are not unfamiliar with legislative policy, especially when that policy has existed nearly one hundred years. In view of the longstanding approval of § 1.100 and its precursors, *see* § 1.100, RSMo 1969; § 1.100, RSMo 1959; § 1.100, RSMo 1949; §§ 654, 13430, RSMo 1939; § 654, RSMo 1929; § 7057, RSMo 1919; § 8056, RSMo 1909; § 5245, RSMo 1899; § 967, RSMo 1889, we think the legislators who drafted and submitted the 1976 amendments to art. V and, more importantly, the people who adopted them believed that population for purposes of art. V, § 27(4)(a) would be determined by reference to the last previous United States decennial census.

That is the only logical belief that the legislature and the people could have had at the time. Population is ascertained by a *census. See Union Electric Co. v. Cuivre River Electric Cooperative,* 571 S.W.2d 790,

---

**3.** A bill relating to the salaries and fees of county officeholders first used the express language "decennial census" in 1933. *See* C.S. S.B. 74, sec. 1, § 11808, 1933 Mo. Laws 369, 370. In 1949 the legislature used the express language "decennial census" to describe the census controlling for all matters. *See* S.B. 1001, sec. 1, § 1.10, 65th Gen.Assem., Reg.Sess. (1949) (codified at § 1.100, RSMo 1949).

794 (Mo.App.1978). Although cities are authorized to take a special census in certain situations, *see* §§ 71.160, 72.060, 81.020, state law makes no provision for a census of individual counties. The only census by which the population of individual counties can be determined is the federal census. At the time the constitutional amendments at issue here were approved by the voters on August 3, 1976, and *a fortiori* at the time the amendments were drafted and submitted by the legislature, the only population census authorized by federal law was the decennial census. Interim *surveys* were authorized if "necessary to furnish annual and other interim current data on the subjects covered by the censuses provided for" in Title 13, 13 U.S.C. § 181 (1970) (current version at 13 U.S.C. § 182 (1976)), but, as noted above, the act authorizing an interim population *census,* which will first be taken in 1985, was not approved until October 17, 1976, two and one-half months after the Missouri constitutional amendments were adopted, Act of Oct. 17, 1976, Pub.L. No. 94–521, sec. 7, § 141(d), 90 Stat. 2459, 2461–62 (codified at 13 U.S.C. § 141(d) (1976)). Neither was there statutory authorization for a special census at the request of a state or its political subdivisions until that date. *Id.* sec. 11(a), § 196, 90 Stat. at 2464 (codified at 13 U.S.C. § 196 (1976)). The only census that could have been intended to be the source of population data for purposes of art. V, § 27(4)(a) was the 1970 federal decennial census.[4] That census, which is applicable in this case, showed Franklin County to have a population of fewer than 65,000 persons on January 2, 1979, the effective date of the amendments to art. V. Respondent became an associate circuit judge on January 2, 1979.

We do not believe, as respondent contends, that § 37.130 requires a different result. That section provides:

> The commissioner of administration shall establish a demographic and statistical unit. This unit shall be responsible for the coordination and preparation of all official population estimates and projections required by state agencies, commissions and local governmental units. The unit shall maintain a processing center for information from each federal census and shall be the responsible agency for federally sponsored programs and federal-state cooperative programs within the areas of demographic analysis. In addition the unit shall provide requested assistance in all reapportionment matters. All agencies of the state shall submit to the office of administration, upon request, any information required for the performance of the duties required under this law.

Respondent argues that data assembled pursuant to this section are reliable because they are used in the compilation of current interim data by the federal census bureau under 13 U.S.C. § 181 (1976). Section 37.-130, however, provides for nothing more than "official population estimates and projections." It makes no provision for a population census as such. Neither does 13 U.S.C. § 181 (1976), which provides only for interim population "data" to be published only "to the extent feasible." Finally, both 13 U.S.C. §§ 141(d), 181 (1976) were enacted after the amendments to art. V were adopted.

Respondent argues that in any event he should be elevated to the position of circuit judge, and receive a concomitant increase in

4. Respondent argues that elsewhere in the Constitution specific reference is made to the decennial census when it is to control and that the legislature therefore did not intend for the decennial census to control with respect to art. V, § 27(4)(a). He cites art. III, §§ 10, 45 and art. IV, § 30(a)(1), (2) in support of his contention. This argument might have merit were we considering art. IV, § 30(a)(1), (2) and its counterpart, art. IV, § 30(b)(1), (3)(f), which respondent did not cite and which referred to population but did not specifically mention the decen-

nial census. Those provisions were adopted by the people on November 6, 1979, and became effective January 1, 1980—well after Congress acted in 1976 to authorize a mid-decade census. Respondent's argument is unpersuasive as regards art. V, § 27(4)(a), however, because, as noted above, at the time that section was adopted the only census to which reference could have been made was the 1970 federal decennial census. This same reasoning applies with equal force to art. III, §§ 10, 45, which were adopted earlier than art. V, § 27(4)(a).

salary, because the 1980 federal decennial census shows that Franklin County now has more than 65,000 inhabitants and because probate judges in counties larger than 65,000 persons historically have been paid the same salary as circuit judges. This argument is received with sympathy but is found lacking in statutory support. The old salary statute, now repealed, provided that probate judges in counties having a population of more than 65,000 persons were to receive a salary equal to that of a circuit judge, § 478.021(4), and that probate judges in "counties of the second class having a population of less than" 65,000, such as Franklin County, were to receive a lesser amount, § 478.021(3). Had Franklin County officially reached a population of more than 65,000 before that section was repealed, respondent would have been entitled to receive the greater amount of compensation. That statute, however, was repealed effective July 1, 1980, Act of July 30, 1979, sec. A, 1979 Mo.Laws 625, 626, and the 1980 federal decennial census did not become effective for purposes of Missouri statute until at least January 1, 1981, § 1.100(1). Respondent was not entitled to the salary of a circuit judge under the old salary statute. Neither is he so entitled under the new. Article V, § 27(4)(a) by its terms provided that a one-time status change would occur "[o]n the effective date" of the amendments. There is no provision for an ongoing elevation of associate circuit judges to the status of circuit judges whenever their counties achieve a population greater than 65,000 persons.[5] Respondent became an associate circuit judge on January 2, 1979, and his status as such has not changed. His salary is governed by § 478.018, RSMo Supp.1982, which provides a salary scale for associate circuit judges based upon the classification of their counties rather than upon population.[6]

■ Respondent contends that the population classification established in art. V, § 27(4)(a) violates the equal protection clause of the fourteenth amendment and the corresponding equal rights and opportunity clause of Mo. Const. art. I, § 2. The several reasons he advances form a convoluted claim that epitomizes Mr. Justice Holmes' characterization of the equal protection clause as "the usual last resort of constitutional arguments." *Buck v. Bell,* 274 U.S. 200, 208, 47 S.Ct. 584, 585, 71 L.Ed. 1000 (1927). Broadly stated, respondent's contention is that the challenged section establishes a limited, population-based classification of circuit judges that is not open to those associate circuit judges whose counties thereafter become eligible to enter the population class. There is no allegation that the classification burdens a suspect class or impinges upon a fundamental right,

**5.** Article V, § 27(3) is not to the contrary. That section provides in relevant part that

> [u]ntil otherwise provided by law, associate circuit judges shall hear all cases or matters as now provided by law for probate courts within the county, except that in the city of St. Louis, in all first class counties, *and all second class counties with a population of over sixty-five thousand,* the circuit judge of the probate division of the circuit court shall hear all cases and matters as now provided by law for probate courts within such circuits or counties.

(Emphasis added.) Respondent argues that the emphasized clause "does not require that the county have a population which exceeds 65,000 on January 2, 1979," and that "[w]hen a county does attain this population a circuit judge does have jurisdiction." We have no quarrel with those statements, but it does not follow, as respondent contends, that the associate circuit judge presiding over the probate division must be elevated to the position of a circuit judge whenever his county reaches a population of more than 65,000 persons. The fact that a circuit judge is required to preside over the probate division does not mean that an associate circuit judge must be made a circuit judge in order to effect compliance. Respondent also overlooks the fact that art. V, § 27(3) is part of the schedule designed to implement the changes brought about by the constitutional amendments and does not purport to be a jurisdictional provision. It requires a circuit judge to preside over the probate division in the stated situations only "[u]ntil otherwise provided by law." The legislature has by statute removed the restrictions on the probate jurisdiction of associate circuit judges. § 478.225(1), –(4).

**6.** Classification of counties is made on the basis of assessed valuation rather than population. *See* § 48.020, RSMo Supp.1982.

*San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 17, 93 S.Ct. 1278, 1288, 36 L.Ed.2d 16 (1973), so the only issue is whether the classification is rationally related to a legitimate state interest, *Friedman v. Rogers,* 440 U.S. 1, 17, 99 S.Ct. 887, 898, 59 L.Ed.2d 100 (1979); *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976); *State v. Bolder,* 635 S.W.2d 673, 682 (Mo. banc 1982), cert. denied, —— U.S. ——, 103 S.Ct. 770, 74 L.Ed.2d 983 (1983).[7] Under this test we perceive no equal protection violation. The classification was nothing more than part of a schedule established to implement the constitutional amendments. "[S]chedules appended to a constitution, as distinguished from the permanent and fundamental law embodied in the constitution itself, are temporary enactments for the purpose of effecting a transition from the old government to the new, and of putting the provisions of the new constitution into effect." *State ex rel. Aquamsi Land Co. v. Hostetter,* 336 Mo. 391, 400–01, 79 S.W.2d 463, 467 (banc 1935). The classification, therefore, is not a continuing one. Indeed, in this instance it operated only for an instant on the effective date of the amendments to accomplish the transition from the old judiciary structure to the new. We think there can be no question that this classification, viewed in the context in which it was made, was rationally related to the legitimate state interest of providing a measure of continuity within a revamped judiciary. Respondent does not seriously challenge the selection of the 65,000 figure, which we consider entirely reasonable.

■ Respondent argues, finally, that the classification violates Mo. Const. art. III, § 40, which proscribes special laws in a variety of areas, and § 1.100(2), which provides that any law limited in its operation to political subdivisions of a specified population must be open to those subdivisions that thereafter acquire the requisite population. This argument is without merit.

7. The tests for determining whether a classification violates the equal protection clause are the same for classifications embodied in state constitutions as they are for classifications embodied in statutes. *See Lucas v. Forty-Fourth Gen. Assembly,* 377 U.S. 713, 734–35 & n. 28, 84 S.Ct. 1459, 1472–73 & n. 28, 12 L.Ed.2d 632 (1964).

Article III, § 40 expressly applies only to legislative enactments, and the constitutional provision at issue is not a legislative enactment. Section 1.100(2) does not apply because, as noted above, the classification operated only on the effective date of the constitutional amendments in order to effect the transition from the old law to the new and was no longer operative by the time Franklin County attained a population of more than 65,000 persons.

In summary, we hold that population for purposes of art. V, § 27(4)(a) is to be determined by reference to the last previous United States decennial census, that of 1970, and that respondent became an associate circuit judge on January 2, 1979.

The judgment of the circuit court is reversed.

WELLIVER, HIGGINS, GUNN, BILLINGS and DONNELLY, JJ., and SEILER, Senior Judge, concur.

RENDLEN, C.J., concurs in result.

BLACKMAR, J., not participating because not a member of the Court when cause was submitted.