Joseph J. ENRIGHT, Appellant,

v.

KANSAS CITY, Missouri and Robert Kipp, Respondents,

and

The School District of Kansas City, Missouri and the School District of Independence, Missouri, Intervenors.

No. 59102.

Supreme Court of Missouri,
En Banc.

April 14, 1976.

Rehearing Denied May 5, 1976.

Kevin E. Glynn, Kansas City, for appellant.

Dan G. Jackson, III, Asst. City Atty., Aaron Wilson, City Atty., and Lawrence B. Saunders, Asst. City Atty., Kansas City, Lee Vertis Swinton, Sp. Counsel, Kansas City, for respondents.

DONNELLY, Judge.

In this suit for injunctive relief and declaratory judgment, plaintiff Joseph H. Enright, a citizen, resident, consumer of retail goods and taxpayer within the corporate limits of the City of Kansas City, contests the authority of the City to grant City funds to school districts, or portions of school districts, lying within the corporate limits of Kansas City. The source of such funds is a city sales tax approved by referendum vote of 29,077 in favor and 24,450 against on August 6, 1974.

The question in the case was posed by the trial court as follows:

"Does the city have such powers? If it does, it is by virtue of subsection (39) of Section 1 of Article I of the Charter or by the reenforcement of Article VI, Section 19(a) of the Constitution of Missouri, an amendment adopted October 5, 1971."

The trial court was of the opinion that the City of Kansas City has such powers and dismissed plaintiff's petition. He appealed.

Article VI, § 19(a) of the Constitution of Missouri reads as follows:

"Any city which adopts or has adopted a charter for its own government, shall have all powers which the general assembly of the state of Missouri has authority to confer upon any city, provided such powers are consistent with the constitution of this state and are not limited or denied either by the charter so adopted or by statute. Such a city shall, in addition to its home rule powers, have all powers conferred by law."

Article I, § 1(39) of the Home Rule Charter of Kansas City provides, "subject only to the necessary extent of the limitations imposed by the Constitutions and Laws of the United States and the State of Missouri," that Kansas City shall have the power:

"To acquire, provide, operate and maintain charitable, educational, comfort, recreative, curative, corrective, detentive, penal and other institutions, departments, functions, facilities, instrumentalities, conveniences and services of any and every kind and character for any public or municipal use or purpose."

*We make the following observations:*

(1) The general authority to impose a sales tax is expressly given the City by §§ 94.500–94.570, RSMo 1969. Therefore, we need not, and do not, decide whether Art. VI, § 19(a), supra, gives a city authority to impose a particular tax, or form of tax, without express authorization from the General Assembly. Cf. Mo.Const., Art. X, § 1, which provides that the taxing power may be exercised by cities ("political subdivisions" under Mo.Const., Art. X, § 15) "under power *granted* to them *by the general assembly* * * *.*" (Emphasis ours.)

█ (2) The general power to impose a sales tax has never been granted school districts (also "political subdivisions" under

Mo.Const., Art. X, § 15) by the General Assembly. See Mo.Const., Art. X, § 11(f), which reads as follows:

"Nothing in this constitution shall prevent the enactment of any general law permitting any county or other political subdivision to levy taxes other than *ad valorem* taxes for its essential purposes."

(3) The primary sources of funding for school districts are *ad valorem* taxes (Mo. Const., Art. X, § 11(b) and 11(c); §§ 164.011 and 164.021, RSMo Supp.1973) and state revenue (Mo.Const., Art. IX, § 3(b)). "Money *donated* to the school districts shall be placed to the credit of the fund where it can be expended to meet the purpose for which it was donated and accepted." (Emphasis ours.) § 165.011, RSMo 1969.

■ (4) The City does not have authority, under Art. VI, § 19(a), supra, to provide in its charter for its *operation* of public schools within its corporate limits. This power is denied it by statute. Sections 162.471, RSMo 1969, and 162.261, RSMo Supp.1973, expressly provide that the "government and control" of each school district involved here shall be vested in the board of directors of such school district.

(5) Article VI, § 25 of the Constitution of Missouri generally denies a city the authority to grant public money "to any *private* individual, association, or corporation * * *." (Emphasis ours.)

(6) We find no constitutional or statutory provision which expressly denies the City authority to donate money to the school districts.

■ In view of the above, we conclude that the taxing power of the school districts is presently limited to the imposition of *ad valorem* taxes but that there are no constitutional or statutory restrictions on sources from which the school districts may receive funds. We also conclude that the City was expressly authorized to impose the sales tax and that it has such powers to distribute the funds realized from the sales tax as are given it by Art. VI, § 19(a), supra, and its Charter.

In our opinion, the powers asserted by the City in Article I, § 1(39) of its Charter are permitted by and are consistent with the grant of powers made a charter city by Art. VI, § 19(a) of the Constitution of Missouri. Therefore, the question in this case is whether the giving of the money to the districts is permissible under authority of Article I, § 1(39) of the Charter. It asserts the power to " * * * provide * * * educational * * * functions * * * and services of any and every kind and character for any public or municipal use or purpose."

■ The parties agree that "there was a public question about the inability of the school district of Kansas City, Missouri, to continue to operate because of the lack of available funds." A financial crisis existed in the Kansas City School District. In these circumstances, we believe the giving of funds by the City to the school districts served a "public or municipal use or purpose."

■ We hold that the City of Kansas City has authority to grant City funds to school districts, or portions of school districts, lying within its corporate limits.

We emphasize, however, that our holding is a limited one. It has been said: "To any extent that one man is compelled to pay in order to relieve others of a public burden properly resting upon them, his property is taken for private purposes, as plainly and as palpably as it would be if appropriated to the payment of the debts or the discharge of obligations which the person thus relieved by his payments might owe to private parties (citing *St. Charles v. Nolle*, 51 Mo. 122; *Wells v. City of Weston*, 22 Mo. 384). 'By taxation,' it is said in a leading case, 'is meant a certain mode of raising revenue for a public purpose in which the community that pays it has an interest. * * *.'" 1 Cooley, Taxation (4th ed.) § 314, p. 653. It is essential to our holding in this case that we can reasonably say that the people of Kansas City have an interest in assuring the viability of the public

schools which educate the children within their community.

The judgment is affirmed.

SEILER, C. J., and HOLMAN and FINCH, JJ., concur.

MORGAN, J., dissents in separate dissenting opinion filed.

BARDGETT and HENLEY, JJ., dissent and concur in separate dissenting opinion of MORGAN, J.

MORGAN, Judge.

I respectfully dissent.

It would not be difficult to commend the city officials of Kansas City for seeking to alleviate a "financial crises" of the Kansas City School District. When the method used however is contrary to the existing law in Missouri, this court should not place a stamp of approval on it regardless of how worthy the objective. The solution should come from the General Assembly or the patrons of the school district.

My reasons for dissenting are:

1. As provided in Article VI, § 19(a) (all references being to the 1945 Missouri Constitution), charter cities can exercise only those powers that "are consistent with the Constitution of this State." Financing of public schools by revenue derived from municipal taxes is inconsistent with Article IX, § 1(a), which provides, in part: "A general diffusion of knowledge and intelligence being essential to the preservation of the rights and liberties of the people, *the general assembly shall establish and maintain free public schools . . .*" (Emphasis added.) The General Assembly has and continues at this time to perform that duty by following Article IX, § 5, which calls for the establishment and preservation of a public school fund for maintaining free public schools (with the high priority of appropriation found in Article III, § 36) plus such ad valorem taxes as are authorized by Article X. Maintenance of public schools by the method in question, in my opinion, is totally inconsistent with that planned by the citizens of this state as now

expressed in their constitution. In *Grant v. Kansas City*, 431 S.W.2d 89 (Mo. banc 1968), this court articulated the meaning of the word "consistent" in Article VI, § 19(a). After the observation was made, l.c. 92[1], that ". . . it is sometimes difficult to determine whether a function should be classified as governmental or corporate," this court did declare that governmental functions are retained by the state unless delegated elsewhere. The constitution of this state makes the establishment and maintenance of public schools a priority governmental function—thus, it is with the state. I have found nothing by research or by reference in the principal opinion delegating that duty to municipalities.

2. Financing of public schools is not a proper subject for municipal taxation. As said in *Kansas City v. Frogge*, 352 Mo. 233, 176 S.W.2d 498, at 503 (1944): "The state by granting to plaintiff city the right to adopt and frame a charter for its own government did not confer upon plaintiff city the right to assume under its charter all of the powers which the state may exercise within the city, but conferred the right to assume those powers incident to it as a municipality. There are governmental powers, the exercise of which is essential to the prosperity and welfare of the people of a city, yet are not essentially appertaining to city government. These powers, unless delegated by the state, are reserved in the state to be exercised by it." Regardless of the scope of power that might be given by implication to a charter city, such powers are limited to and must appertain to corporate (municipal) functions. A taxpayer of the city has the right to demand that municipal taxes be used solely for city purposes.

3. The principal opinion is predicated, at least in part, on the statement therein that: "(6) We find no constitutional or statutory provision which expressly denies the City authority to donate money to the school districts." I would respectfully suggest that the conclusion noted is not only not authority for the decision reached, but that it dictates the opposite result under the law

of this state. Taxation is based on the power to tax. For instance, as said in *United Air Lines, Inc. v. State Tax Commission*, 377 S.W.2d 444, l.c. 448[3–6] (Mo. banc 1964): "In a taxing statute there must be specific authority, or authority necessarily implied, for the imposition of a tax upon any particular property." Of the many cases so holding, perhaps it was stated most emphatically in *Leavell v. Blades*, 237 Mo. 695, 141 S.W. 893, l.c. 894 (1911), by Judge Lamm when he said: "When the tax gatherer puts his finger on the citizen, he must also put his finger on the law permitting it."

4. I am convinced that the word "educational" found in Article 1, § 1(39), of the Kansas City Charter was not used in the context which the city and district now give to it. Many cities provide libraries and other facilities of an educational nature, but it is inconceivable that those drafting the charter or the voters approving it contemplated paying taxes to finance the public schools.

5. At the risk of being heretical, I would suggest that the plan approved in the principal opinion effectively disenfranchised the patrons and voters in the school district. Notwithstanding the vote of the taxpayers of the school district, a tax has been imposed upon them now for purposes which they rejected.

6. In effect, the principal opinion approves taxation by the city for financing of public schools but renounces any authority in the city to operate or control the public schools. With the latter I wholly agree, but would suggest that this court need not hide its eyes from what has become a fact of life, i. e., control follows the source of money in any public activity.

7. Taxing residents of Kansas City and dividing the revenue with school districts (operating schools outside the city limits of Kansas City) speaks for itself.

Finding taxation by the city for public school purposes illegal, I would disapprove the same.