**ST. LOUIS CHILDREN'S HOSPITAL, a pro forma decree corporation, Respondent,**

v.

**James F. CONWAY, Mayor, City of St. Louis, et al., Appellants.**

No. 60805.

Supreme Court of Missouri, En Banc.

June 27, 1979.

Jack L. Koehr, City Counselor, Robert C. McNicholas, Associate City Counselor, St. Louis, for appellants.

Kenneth F. Teasdale, Richard A. Oertli, Timothy K. Kellett, St. Louis, Robert C. Jones, Harold A. Tzinberg, Clayton, for respondent.

## PER CURIAM.

Defendants-appellants appeal from a decree of the circuit court which mandated appellants, the mayor, building commissioner, director of streets, and the city of St. Louis (city), to issue certain permits needed by plaintiff-respondent St. Louis Children's Hospital (hospital) to build an addition to that hospital over a portion of Kingshighway Boulevard, a public street in St. Louis. The appeal was originally taken to the Missouri Court of Appeals, Eastern District, but on recommendation of the court of appeals, this court transferred the cause here, prior to opinion, as it appeared to present a matter of general statewide interest and importance. Art. 5, sec. 10, Mo.Const., as amended 1970; Rule 83.06.

The underlying facts, in the main, are not in dispute. The hospital is a not-for-profit private institution which specializes in the care and treatment of injuries and illnesses of children and is located on the east side of the 500 block of Kingshighway Boulevard. Kingshighway is a main north-south roadway and at the place in question is about eight or ten lanes wide with a divider separating north and south bound traffic. Forest Park, which is the largest park in St. Louis, is on the west side of Kingshighway across from the hospital. The hospital concluded that the only direction it could expand laterally was to the west—over Kingshighway. To facilitate or authorize this construction, ordinance No. 57251 was passed by the St. Louis Board of Aldermen (legislative body) and signed by the then mayor, Hon. John Poelker, in October 1976.[1]

---

1. Ordinance No. 57251 provides in part:

"An ordinance to accommodate construction for an addition to Children's Hospital in air space by providing for the conditional vacation of a part of Kingshighway Boulevard, adjacent to City Block 3888, and setting forth the conditions and reservations of such vacation, and containing an emergency clause.

"BE IT ORDAINED BY THE CITY OF ST. LOUIS, AS FOLLOWS:

"Section One. Subject to the reservations hereinafter contained, and when the conditions specified in Section Two hereof are complied with, a tract of land in the right-of-way of Kingshighway Boulevard adjacent to City Block 3888 and being more particularly described as follows:

"Beginning at a point on the South line of Audubon Avenue 60 feet wide and on the East line of Kingshighway Boulevard 130 feet wide; said point being the Northwest corner of City Block 3888, thence along the East line of Kingshighway Boulvevard, South 272.50 feet to the point of beginning; thence continuing along aforesaid Road line; South 190 feet to a point; thence West and in the Right-of-Way of said road 110 feet to a point; thence North and parallel to the East line of Kingshighway Boulevard 190 feet to a point; thence East 110 feet to the East line of Kingshighway Boulevard and the point of beginning, containing 0.479 acre of Kingshighway Boulevard

shall be vacated and abolished, and upon failure to comply with said conditions of Section Two the said area shall be and remain a public street of the City of St. Louis.

"Section Two. St. Louis Children's Hospital shall grant and file for record a perpetual easement to the City of St. Louis for the public, providing for public surface rights of vehicle, equestrian and pedestrian travel upon and across the vacated area; St. Louis Children's Hospital shall grant and file for record a perpetual easement for present and future uses of utilities, governmental service entities and franchise holders. Said perpetual easements shall be approved by the Board of Public Service prior to being filed for record.

"Section Three. The Mayor and the Comptroller are hereby authorized and directed to execute and deliver a special warranty deed to the vacated area described in Section One hereof to St. Louis Children's Hospital for the sum of one dollar and other valuable consideration, subject to the perpetual surface easement described in Section Two hereof, and further subject to the condition that if the buildings erected and constructed in the vacated area shall not be used for a children's hospital for any period in excess of two years, all right, title and interest in and to the vacated area and all buildings constructed therein shall, at the election of the City of St. Louis, revert to and become the property of the City of St. Louis, and reserving all other public rights within the vacated area, including present and future uses of utilities, governmental service entities and public franchise holders.

\* \* \* \* \* \*

"Section Six. Notwithstanding ordinance provisions to the contrary, the Building Division is hereby authorized and directed to issue a special building permit to St. Louis Children's Hospital for the erection, construction and use

On April 6, 1977, pursuant to the ordinance, Mayor Poelker and Comptroller Bass executed a Special Warranty Deed and Deed for Easement conveying to Children's Hospital the property designated in the ordinance and received back a perpetual surface easement as described in section two of the ordinance.

On May 16, 1977, the newly elected mayor, Hon. James Conway, issued an order forbidding other officials from approving plans or issuing any permits relating to the expansion of Children's Hospital over Kingshighway.

Following that order the hospital filed this suit for declaratory and injunctive relief seeking judgment requiring the offi-

cials to honor the deed and issue the permits and approve the plans necessary to the construction over Kingshighway.

As noted, the circuit court held the ordinance and deed valid and granted the relief sought by the hospital after which the city appealed.

The decisive issue presented on this appeal is whether the city of St. Louis has the constitutional authority to give title to a public street (Kingshighway) to a private corporation under the restrictions of art. 1, sec. 27,[2] art. 6, sec. 23,[3] art. 6, sec. 25,[4] but considering the power granted by art. 6, sec. 19(a),[5] Mo.Const.

The hospital is a private corporation and not a governmental or public corporation.

of a building or buildings and other related facilities in connection therewith, as well as future additions, alterations, improvements thereto and renewals and rebuildings thereof, in the vacated area above the aforesaid surface easement, when the Division shall find that:

1. Such building and related facilities are at least 16 feet above a horizontal plane formed at the highest point of Kingshighway Boulevard within the vacated area.
2. The manner of construction shall be such as not to unduly interfere with the operation of the surface easement.
3. The materials used shall be such as are customarily used in projects of this type involving construction over highway right-of-ways.
4. The columns, footings and foundations of the building or buildings and other related facilities in connection therewith will not constitute a traffic hazard within the meaning of this ordinance. The term 'traffic hazard' shall mean that such columns, footings and foundations will not unduly interfere with the vision of the operators of motor vehicles nor the movement of such motor vehicles in the surface easement area.
5. St. Louis Children's Hospital shall pay all costs of curb removal, resetting, relocation, removal, adjustment, and additional pavement required, and the cost of relocation of sewer facilities which may have to be relocated or altered in connection with the aforesaid construction."

2. Art. 1, sec. 27.

"That in such manner and under such limitations as may be provided by law, the state, or any county or city may acquire by eminent domain such property, or rights in property, in excess of that actually to be occupied by the

public improvement or used in connection therewith, as may be reasonably necessary to effectuate the purposes intended, and may be vested with the fee simple title thereto, or the control of the use thereof, and may sell such excess property with such restrictions as shall be appropriate to preserve the improvements made."

3. Art. 6, sec. 23.

"No county, city or other political corporation or subdivision of the state shall own or subscribe for stock in any corporation or association, or lend its credit or grant public money or thing of value to or in aid of any corporation, association or individual, except as provided in this constitution."

4. Art. 6, sec. 25.

"No county, city or other political corporation or subdivision of the state shall be authorized to lend its credit or grant public money or property to any private individual, association or corporation except as provided in Article VI, Section 23(a) and except that the general assembly may authorize any county, city or other political corporation or subdivision to provide for the retirement or pensioning of its officers . . . ."

5. Art. 6, sec. 19(a).

"Any city which adopts or has adopted a charter for its own government, shall have all powers which the general assembly of the state of Missouri has authority to confer upon any city, provided such powers are consistent with the Constitution of this State and are not limited or denied either by the charter so adopted or by statute. Such a city shall, in addition to its home rule powers, have all powers conferred by law."

*Ruggeri v. City of St. Louis,* 429 S.W.2d 765 (Mo.1968). There is no contention made that monetary consideration was actually intended to move from the hospital to the city as consideration for the real property conveyed. Mayor Poelker testified that no compensation (consideration) was even discussed.[6] The mayor testified, in connection with the question of consideration, "Of course, we were talking about air rights and the city has frequently given air rights over streets and public ways without exacting from the receiver any compensation."

The hospital argues that the public benefits substantially from the Children's Hospital, as it now exists, and will benefit from the future medical services rendered by the hospital to children, a good part of which is free medical service.

■ There is no question but what the people of the city of St. Louis and other areas greatly benefit from the services rendered by the Barnes Hospital Group and St. Louis Children's Hospital in particular; however, the hospital is, nevertheless, a private—not a public—institution and the services rendered are essentially the same as any other hospital. And with all due respect for the special services rendered to children by the instant hospital, it must be observed that other private corporations also render benefits to the communities in which they are situated. But those benefits cannot be utilized to convert a private corporation or association into a public corporation for the purpose of allowing a municipal government to give its property away without, in effect, completely obliterating the prohibition against giving public property to private persons or associations as provided in our constitution.

The discussion of *private* and *public institutions* in this context relates to the prohibitions in the constitution against giving public property to private persons and not to the propriety of private corporations being permitted by the city to utilize the air space above the street in a way not inconsistent with or in any way impeding the public use of the street.

■ Art. 1, sec. 1(8), Charter of the City of St. Louis, cited by respondents, authorizes the city "*To* acquire or receive and hold, maintain, improve, sell, lease, mortgage, pledge or *otherwise dispose of property, real* or personal, and any estate or interest therein *within* or without *the city* or state." (Emphasis added.) This provision, however, cannot be construed to grant to the city a power the constitution otherwise denies.

However, art. 6, sec. 19(a), Mo.Const., clearly grants to a constitutional charter city all power which the legislature *could* grant. The legislature many years ago affirmatively provided that constitutional charter cities have broad and exclusive power over their public streets. Section 82.190, RSMo 1969 (originally approved March 10, 1887, Laws 1887, p. 51, sec. 50), provides: "Such city shall have exclusive control over its public highways, streets, alleys and public places and shall have exclusive power, by ordinance, to vacate or abandon any public highway, street, avenue, alley or public place, or part thereof, any law of this state to the contrary notwithstanding."

■ It becomes readily apparent that a constitutional charter city, and perhaps other cities, has been granted almost pervasive power to control their public streets, including power to vacate a street or part thereof. Here, however, the city went through the motions of vacating a street and at the same time required the area to remain in use as a public street. The result, of course, is that the street is not vacated at all.

The substance of the ordinance provides for a transfer by warranty deed of a real property interest and not the vacation of a street. At least a part of the property conveyed by the city was held in fee simple—the area that was part of Forest Park. We do not know what interest—fee or ease-

ment—the city held in the remainder of the property. The gift of this real property by the city to a private institution cannot be approved in view of the prohibitions contained in art. 1, sec. 27, Mo.Const., which permits the disposition to be by "sale", and art. 6, secs. 23 and 25, Mo.Const., which prohibits the giving away of public property to a private association or corporation.

The court has been informed by the parties of the importance of this case with respect to the utilization of air space over public streets by private entities with the permission of the city. Although the preamble to the ordinance recites that its purpose is to accommodate the construction of an addition to the hospital in the air space over Kingshighway, nevertheless, the method used to accomplish that end violates the Constitution of Missouri as set forth supra and cannot be approved. This is not to be understood as diminishing the control a city has over its streets, including the air space above them. Nor should it be taken as any restriction of the power of a constitutional charter city to permit building in the air space over streets so long as it does not impede travel or public use of the streets, and does not contravene property rights of others. If there are questions relating to such matters, they are simply not adjudicated in this case.

The warranty deed is invalid for the reasons stated supra. The judgment of the circuit court is reversed with directions to deny relief to plaintiff-respondent and enter judgment for defendants-appellants.

MORGAN, C. J., BARDGETT and SEILER, JJ., WELBORN, Special Judge, and FINCH, Sr., J., concur.

DONNELLY and RENDLEN, JJ., concur in result.

SIMEONE, J., not sitting.

WELLIVER, J., not participating because not a member of the court when cause was submitted.