CAPE MOTOR LODGE, INC., et
al., Respondents,

v.

CITY OF CAPE GIRARDEAU,
Missouri, et al., Appellants.

No. 67507.

Supreme Court of Missouri,
En Banc.

March 25, 1986.

Webb R. Gilmore, Ronald L. Blunt, Kansas City, Joseph J. Russell, Diane C. Howard, Fred Boeckmann, Cape Girardeau, Bruce E. Woodruff, John Warshawsky, St. Louis, for appellants.

Walter S. Drusch, Cape Girardeau, for respondents.

HIGGINS, Chief Justice.

The City of Cape Girardeau appeals summary judgment for Cape Motor Lodge, et al., declaring that the City lacked authority to construct and operate a multi-use center jointly with the Board of Regents of Southeast Missouri State University. The City contends the trial court erred in declaring unconstitutional, illegal and unenforceable: the "Multi-Use Center Agreement" between the City and SEMO; ordinance 174 authorizing the agreement; ordinance 190 authorizing the issuance of general obligation bonds to finance the City's costs for the project and levying a property tax to retire the bonds; and a portion of ordinance 101 levying a gross receipts license tax on hotels, motels, and restaurants to assist in retiring the bonds. The judgment is reversed and remanded.

The City of Cape Girardeau is a constitutional charter city. Mo. Const. art. VI, § 19. In 1982, an advisory committee composed of City officials, SEMO officials and members of the City's business community proposed that SEMO and the City jointly finance, construct and operate a $12.9 million Multi-Use Center, the City to finance $5 million of the cost with general obligation bonds and SEMO to finance the remaining $7.9 million of the cost with state appropriations. On April 5, 1983, the people of the City approved the proposition by a vote of 72.8% to 27.2%.

On September 21, 1983, the City Council enacted ordinance 101 which levied a license tax on hotels and motels in an amount equal to 3% of gross receipts derived from sleeping accommodations and on restaurants in an amount equal to 1% of gross receipts derived from food sales, the revenues to be used to retire the bonds and promote conventions, tourism and economic development. The people of the City approved the tax by a vote of 61.4% to 38.6%.

The City and SEMO then drafted the Multi-Use Center Agreement. The agreement provided: SEMO and the City will jointly design, construct, furnish and equip the Multi-Use Center with 5/13 of the costs to be born by the City and 8/13 by SEMO; upon the recommendation of a citizens' advisory committee, the Multi-Use Center will be located on SEMO campus and SEMO will hold title to the property and own the building; the Multi-Use Center will be available for a variety of SEMO and community uses, supervised by a six-member

Board of Managers, three to be appointed by the City and three by SEMO; and SEMO will be responsible for the costs of operating and maintaining the building. SEMO approved and authorized execution of the Multi-Use Center Agreement; the City Council did the same by enacting ordinance 174. On October 31, 1984, the agreement was executed and the City enacted ordinance 190 authorizing issuance of its general obligation bonds in the amount of $5 million.

On December 26, 1984, respondents, a group of local hotel, motel and restaurant owners and operators, sought declaratory judgment and injunction alleging: the City has no authority to enter into the agreement and therefore the agreement and ordinance 174 authorizing the agreement, are invalid; ordinance 190 authorizing the issuance of the bonds and the levy of an *ad valorem* tax, is invalid; and ordinance 101 authorizing the levy of the hotel, motel and restaurant tax, is invalid. In its summary judgment, the trial court ruled: the City does not have the power to authorize or enter into the Multi-Use Center Agreement because SEMO is not an entity named in either Mo. Const. art. VI, § 16, or section 70.220, RSMo 1978; that ordinances 190 and 101, to the extent they levy taxes for the payment of the bonds issued to finance the City's cost of the Multi-Use Center, are invalid because the taxes are not in furtherance of either a "public purpose" within the meaning of Mo. Const. art. X, § 3, or a "municipal purpose" within the meaning of Mo. Const. art. X, § 1. The trial court enjoined the City from implementing the agreement and the ordinances.

The City contends that this Court should be guided by Missouri's constitutional home rule provision set forth in Mo. Const. art. VI, § 19(a), and that execution of the Multi-Use Center Agreement between the City and SEMO and ordinance 174 were proper exercises of the City's powers derived from the home rule provision. Section 19(a) of article VI of the constitution provides:

**Power of charter cities, how limited.** Any city which adopts or has adopted a charter for its own government, shall have all powers which the general assembly of the state of Missouri has authority to confer upon any city, provided such powers are consistent with the constitution of this state and are not limited or denied either by the charter so adopted or by statute. Such a city shall, in addition to its home rule powers, have all powers conferred by law.

■ Section 19(a) grants to a constitutional charter city all the power which the legislature could grant. *St. Louis Children's Hospital v. Conway,* 582 S.W.2d 687, 690 (Mo.banc 1979). Prior to the adoption of section 19(a) in 1971, this Court felt compelled to find some grant of authority in the constitution, statutes or the charter. *See Halbruegger v. City of St. Louis,* 302 Mo. 573, 262 S.W. 379, 384 (banc 1924). Under section 19(a), in the absence of an express delegation by the people of a home rule municipality in their charter, the municipality possesses all powers which are not limited or denied by the constitution, by statute, or by the charter itself. *Hannah ex rel. Christ v. City of St. Charles,* 676 S.W.2d 508, 512 (Mo. banc 1984). Recognizing the City's power is derived from section 19(a), the question becomes: Are the agreement and ordinance 174 "consistent with the constitution of this state and ... not limited or denied either by the charter so adopted or by statute."? Mo. Const. art. VI, § 19(a). *See Frech v. City of Columbia,* 693 S.W.2d 813 (Mo. banc 1985). Respondents argue that the City is without authority to enter into the Multi-Use Center Agreement with SEMO by the terms of Mo. Const. article VI, section 16, and section 70.220, RSMo 1978. Section 16 of article VI of the constitution provides:

**Cooperation by local governments with other governmental units.** Any municipality or political subdivision of this state may contract and cooperate with other municipalities or political subdivisions thereof, or with other states or their municipalities or political subdivisions, or with the United States, for the

planning, development, construction, acquisition or operation of any public improvement or facility, or for a common service, in the manner provided by law. The enabling statute, section 70.220, RSMo 1978, provides:

**Political subdivisions may cooperate with each other, with other states, the United States or private persons.**—Any municipality or political subdivision of this state, as herein defined, may contract and cooperate with any other municipality or political subdivision, or with an elective or appointive official thereof, or with a duly authorized agency of the United States, or of this state, or with other states or their municipalities or political subdivisions, or with any private person, firm, association or corporation, for the planning, development, construction, acquisition or operation of any public improvement or facility, or for a common service; provided, that the subject and purposes of any such contract or cooperative action made and entered into by such municipality or political subdivision shall be within the scope of the powers of such municipality or political subdivision.

Respondents argue that the City did not have the power to enter into the Multi-Use Center Agreement because SEMO is neither a "municipality or political subdivision" under the constitution and section 70.220, nor a "duly authorized agency of this state" under section 70.220. Respondents assert that section 16 of article VI and section 70.220 delineate with particularity the entities which may enter into cooperative agreements with a municipality; and that section 70.220 and section 16 of article VI do not provide for cooperative agreements with state colleges. Therefore, respondents contend that the City has exercised a power limited by statute and the constitution—thereby directly violating Mo. Const. art. VI, § 19(a).

This analysis was rejected in *Frech.* The City of Columbia had enacted an ordinance which authorized the municipal judge to issue search warrants for administrative searches conducted in connection with the City's licensing procedure of apartment houses and rooming houses. Plaintiffs contended that because the subject matter of the ordinance was not included in chapter 542, RSMo 1978, which governs the procedure applicable to the issuance of search warrants in criminal proceedings, the City had therefore exercised a power limited by statute; further, plaintiffs contended that the ordinance was inconsistent with this Court's constitutional authority to promulgate rules of practice and procedure for Missouri courts. This Court determined that chapter 542 neither expressly nor implicitly prohibits what the ordinance permits and that the ordinance neither impinges upon nor conflicts with this Court's constitutional authority to promulgate rules of practice and procedure for municipal courts. Accordingly, the ordinance was held not to violate article VI, section 19(a). *Id.* at 815–16.

Under section 19(a), the emphasis no longer is whether a home rule city has the authority to exercise the power involved; the emphasis is whether the exercise of that power conflicts with the Missouri Constitution, state statutes or the charter itself. Conflicts between local enactments and state law provisions are matters of statutory construction. Once a determination of conflict between a constitutional or statutory provision and a charter or ordinance provision is made, the state law provision controls. *See St. Louis Children's Hospital,* 582 S.W.2d at 691; *Hannah ex rel. Christ,* 676 S.W.2d at 513.

The test for determining if a conflict exists is whether the ordinance "permits what the statute prohibits" or "prohibits what the statute permits." *Page Western, Inc. v. Community Fire Protection Dist.,* 636 S.W.2d 65, 67 (Mo. banc 1982); *Vest v. Kansas City,* 355 Mo. 1, 194 S.W.2d 38, 39 (1946). Article VI, section 16, and section 70.220 each provide "[a]ny municipality ... may contract and cooperate with ..."; ordinance 174 provides "[t]he City Manager on behalf of the City of Cape Girardeau, Missouri, is authorized to enter

into an Agreement with Southeast Missouri State University...." None of these provisions is written in the form of a prohibition or limitation, *see Aquamsi Land Co. v. City of Cape Girardeau,* 346 Mo. 524, 142 S.W.2d 332, 337 [10] (1940); *Hannah ex rel. Christ,* 676 S.W.2d at 510–511, 513 (This Court recognized explicit limitations in section 71.015, RSMo Supp.1983.); each of these is written as an affirmative grant of permission. Ordinance 174 does not expressly prohibit what the state law provisions permit; nor do article VI, section 16, and section 70.220 expressly prohibit what the ordinance permits. The language of these provisions is not expressly inconsistent, nor in irreconcilable conflict.

■ Statutory cities, acting without a constitutional home rule charter, cannot act without specific grants of power, *State ex rel. Mitchell v. City of Sikeston,* 555 S.W.2d 281 (Mo. banc 1977); section 70.220 is such a grant of power. In commenting on whether statutes that grant powers to municipalities are to be construed under article VI, section 19(a), to limit power to the particular way provided in the statute, the drafters of the amendment expressed:

> Since constitutional charter cities would no longer need statutory authorization to exercise a wide range of powers, such cities could elect to establish their own procedures and limitation unless the statute in question was so comprehensive and detailed as to indicate a clear intent that it should operate as both authorization and limitation.

Missouri Local Government at the Crossroads: Report of the Governor's Advisory Council on Local Government Law, p. 5 (1968). In carrying out the intent behind section 19(a), caution should be exercised in finding that a power granted to non-home rule cities places an implied limitation on the powers derived from section 19(a), unless such an intent is clear from the constitution or statute itself.

■ Section 70.220 and section 16 of article VI do not "operate as both authorization and limitation." These provisions contain no indication that the express enumer-

ations of the entities named are to be considered as the exclusion of others not named. *See Bohrer v. Toberman,* 360 Mo. 244, 227 S.W.2d 719 (banc 1950). Section 70.220 contains no expressions that the legislature intended to preempt the area by limiting cooperative agreements to only those entities named in the statute. If this had been the legislative intent it could have so stated. *Community Fire Protection Dist.,* 636 S.W.2d at 66; Comment, State-Local Conflicts Under the New Missouri Home Rule Amendment, 37 Mo.L.Rev. 677 (1972). Ordinance 174 proposes a cooperative agreement which was determined to be the most practical and economic method for this particular municipality. The legislature could not have intended for municipalities to be precluded from financing and constructing this public multi-purpose center in the most practical and economic fashion. In keeping with the spirit and letter of section 19(a), this Court has studied section 70.220 and article VI, section 16, and is unable to find any provision or language which is susceptible to the restrictive meaning respondents would read into the statute. *Frech,* 693 S.W.2d at 815.

■ Article VI, section 16, and section 70.220 are relevant to a home rule city only to the extent that a local enactment cannot prohibit a municipality from entering into cooperative arrangements otherwise permitted by these state law provisions. This Court holds therefore that ordinance 174 does not violate Mo. Const. art. VI, § 19(a), because the state law provisions and the charter itself neither expressly nor implicitly prohibit the City from entering into the Multi-Use Center Agreement with SEMO.

Section 19(a) provides that home rule cities "shall have all powers which the general assembly of the state of Missouri has authority to confer upon any city...." Mo. Const. art. VI, § 19(a). This grant of power will not be undermined by a determination that the general assembly could not grant a city the power to contract with a state college for the purpose of jointly constructing a multi-purpose building for their mutual benefit. "Except as limited by

State and Federal Constitutions the power of the General Assembly to enact legislation is substantially unlimited and absolute." *City of Maryville v. Cushmann,* 363 Mo. 87, 249 S.W.2d 347, 350 (banc 1952); *Three Rivers Junior College Dist. v. Statler,* 421 S.W.2d 235, 238 (Mo. banc 1967). "An act of the legislature is presumed to be valid and will not be declared unconstitutional unless it clearly and undoubtedly contravenes some constitutional provisions." *Americans United v. Rogers,* 538 S.W.2d 711, 716 (Mo. banc 1976), *cert. denied,* 429 U.S. 1029, 97 S.Ct. 653, 50 L.Ed.2d 632. This Court finds no constitutional provisions prohibiting the general assembly from authorizing cooperative agreements between the City and SEMO. By enacting section 70.220, the legislature has stated its intent to enable municipalities to effect economic development and facilitate the performance of their related functions. *School Dist. of Kansas City v. Kansas City,* 382 S.W.2d 688, 692 (Mo. banc 1964). Ordinance 174 is not inconsistent with this purpose and authorization by the legislature, and the ordinance does not "clearly and undoubtedly contravene some constitutional provisions."

The City also argues that SEMO is a "municipality" and a "duly authorized agency of this state" and therefore expressly permitted to enter into the cooperative agreement with the City under article VI, section 16, and section 70.220. This Court's holding that the City has authority under article VI, section 19(a), to enter into the agreement renders it unnecessary to discuss whether SEMO is a "municipality" or a "duly authorized agency of this state." *General Motors Corp. v. Fair Employ. Prac. Div. of the Coun. on Hum. Rel.,* 574 S.W.2d 394, 397 (Mo. banc 1978).

The City asserts the trial court erred in finding that ordinance 190 and ordinance 101, to the extent that revenues are intended to be used to retire the bonds, are unconstitutional and violative of Mo. Const. art. X, § 3, which requires that taxes be levied for "public purposes" and Mo. Const. art. X, § 1, which requires that the taxing power be exercised for "municipal purposes."

Relying on *Enright v. Kansas City,* 536 S.W.2d 17 (Mo. banc 1976), the trial court held that "this taxation [ordinances 101 and 190] is tantamount to the taking of money from the City of Cape Girardeau for a private purpose in violation of article X, section 3." Article X, section 3, provides in part:

> **Limitation to taxation to public purposes—uniformity—general laws—time for payment of taxes—valuation.** Taxes may be levied and collected for public purposes only, and shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax.

No hard and fast rules exist for determining whether specific uses and purposes are public or private. *J.C. Nichols Co. v. City of Kansas City,* 639 S.W.2d 886, 891 (Mo.App.1982); *See State ex rel. Farm Elec. Coop., Inc. v. State Env. I.A.,* 518 S.W.2d 68, 74 (Mo. banc 1975). In *Enright v. Kansas City,* 536 S.W.2d at 19, this Court held that to be for a public purpose, taxes must be levied for a purpose "in which the community that pays it has an interest." It is not necessary that the whole community should actually use or be benefited by a contemplated improvement. Nor is a public improvement deprived of its public character because its advantage inures to a particular individual or group of individuals. *Bowman v. Kansas City,* 361 Mo. 14, 233 S.W.2d 26, 33 (banc 1950).

The Multi-Use Center Agreement provides the Center shall be available for a wide variety of SEMO and community uses; such uses include major entertainment attractions, circuses, concerts, conventions, service club and charitable activities, flea markets, antique shows, auto and boat shows, farm and home shows, and industrial trade shows. These activities will be open to the residents of the City. The City can anticipate economic benefit to the extent that any of these activities attract others to the City. The Center is calculated to promote the education, the

recreation, and the pleasure of the public and will be conveniently accessible to those residents of the City. *Vrooman v. City of St. Louis*, 337 Mo. 933, 88 S.W.2d 189, 193 (banc 1935). The trial court seemed to emphasize that the Multi-Use Center will be owned by SEMO and that *ipso facto* it cannot be for a "public purpose" of the City. The benefit to the residents of the City is the paramount consideration here, not additional benefit to non-residents or ownership in another government entity such as SEMO. *Vrooman*, 88 S.W.2d at 193. The City's objective was to find a means of financing a public recreational center at a minimal cost to taxpayers; such an objective serves a public purpose. This Court holds that taxes levied for the Multi-Use Center project referred to by ordinances 190 and 101 are in the public interest and for a public purpose. *See also Halbruegger v. City of St. Louis*, 302 Mo. 573, 262 S.W. 379 (banc 1924).

In finding that the taxes were not imposed for a "public purpose," the trial court also relied in part upon a suggestion that the entire burden of funding all SEMO capital expenditures rests on the general assembly. However, "there are no constitutional or statutory provisions designed to limit [SEMO] to appropriations made by the general assembly. In fact the contrary appears." *State ex rel. Curators of the University of Missouri v. Neill*, 397 S.W.2d 666, 671 (Mo. banc 1966).

■ The trial court also held that ordinances 190 and 101, and the taxes levied thereby for the costs and retirement of the bonds, do not constitute a "municipal purpose" and thereby violate article X, section 1. Article X, section 1, provides:

> **Taxing power—exercise by state and local governments.** The taxing power may be exercised by the general assembly for state purposes, and by counties and other political subdivisions under power granted to them by the general assembly for county, municipal and other corporate purposes.

A municipal purpose is one which comprehends all activities essential to the comfort, convenience, safety and happiness of the citizens of the municipality. The tax revenues to be derived from ordinances 190 and 101 are to be used for retiring a debt incurred by the municipality to pay its share of the costs of the Multi-Use Center intended to benefit the residents of the municipality. The agreement itself provides that the Center shall be available for community uses. Further, the Center is to be managed by a six-member Board of Managers, three to be appointed by SEMO and three by the City; management of local affairs by local authorities supports a finding of "municipal purpose." *Dysart v. City of St. Louis*, 321 Mo. 514, 11 S.W.2d 1045 (banc 1928). Accordingly, the taxes imposed by ordinance 190 and 101 serve a "municipal purpose."

In holding that ordinance 190 and 101 violate article X, section 1, the trial court based its finding, in part, on the assertion that the City's charter has no enabling provisions authorizing the project contemplated by the Multi-Use Center Agreement. However, under the 1971 home rule provision it is no longer necessary to determine if a constitutional charter city is authorized by statute or charter to use public money or vote bonds for a particular purpose, *see Halbruegger*, 262 S.W. at 384. *Hannah ex rel. Christ*, 676 S.W.2d at 512–13.

■ In finding that the taxes are not for a "municipal purpose," the trial court also held that the Multi-Use Center Agreement is unenforceable because the agreement lacks "mutuality of obligation," the agreement constitutes only an "agreement to agree," the six-member Board of Managers would invite indecision through tie votes and the board's guidelines are too vague to resolve disputes.

"Mutuality of obligation is present when one of the contracting parties agrees to do one thing and the other some other thing." *Little Rock Surgical Co. v. Bowers*, 227 Mo.App. 744, 42 S.W.2d 367, 369 (1931). "It does not mean that the respective undertakings, or obligations, shall be equal to, or commensurate with one another."

*Warren v. Ray County Coal Co.*, 200 Mo. App. 442, 207 S.W. 883, 885 (1919). The City has agreed to pay $5/13$ of the costs of construction of the building and to vest title in SEMO; SEMO has agreed to provide the land and pay the balance of the construction costs as well as maintenance and operating costs. Further, the City and SEMO have promised each other to allow the Center to be used for both SEMO and community events. Mutuality of obligation thus exists.

 Under the terms of the agreement, SEMO and the City retain active participation in the Multi-Use Center enterprise; both are to retain control over the Center. A contract is not avoided for indefiniteness because the specific details are not fully established. *Scott v. Kempland,* 264 S.W.2d 349, 355 (Mo.1954). Greater specification in this agreement would only serve to stifle the flexibility intentionally built into this governing board. Further, a reading of the Multi-Use Center Agreement shows that the agreement comports with section 70.260, RSMo 1978, which outlines the provisions which may be included in the joint contract. And "[i]n case any illegal use of the building is attempted, the courts will be open for the proper proceedings to prevent it." *Halbruegger,* 262 S.W. at 384.

The judgment is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

All concur.