Dear Representative Backer:
This opinion is in response to your questions asking:
 1. May a charter city (the City of Fulton) de-annex (or remove) land from within its corporate boundary?
 2. If the answer to question number 1 is in the affirmative, what is the proper procedure for de-annexing land from the corporate boundary of a charter city? (What should be contained in an ordinance or resolution proposing to de-annex a tract of land from the city boundary?)
We have been informed the City of Fulton adopted its charter and became a constitutional charter city in 1986.
Article VI, Section 19(a), Missouri Constitution, provides:
 Section 19(a), Power of charter cities, how limited. Any city which adopts or has adopted a charter for its own government, shall have all powers which the general assembly of the state of Missouri has authority to confer upon any city, provided such powers are consistent with the constitution of this state and are not limited or denied either by the charter so adopted or by statute. Such a city shall, in addition to its home rule powers, have all powers conferred by law.
Prior to the adoption of Section 19(a) in 1971, the powers of a constitutional charter city were limited to those which the people had expressly delegated to the city under their charter and the powers granted to the city by statute. As the court held in State ex inf. Hannah ex rel. Christ vs. City ofSt. Charles, 676 S.W.2d 508 (Mo. banc 1984):
 "Section 19(a) clearly grants to a constitutional charter city all power which the legislature is authorized to grant. St. Louis Children's Hospital v. Conway, 582 S.W.2d 687, 690 (Mo. banc 1979). Under Missouri's new model of home rule, even in the absence of an express delegation by the people of a home rule municipality in their charter, the municipality possesses all powers which are not limited or denied by the constitution, by statute, or by the charter itself." Id. at 512.
Since the adoption of Section 19(a), annexations of contiguous land by a constitutional charter city are no longer considered to be an amendment of the city's charter.
 "Under § 19(a) it is no longer necessary for a home rule charter city to claim the power of annexation of a particular parcel of land by charter amendment because, even in the absence of a charter provision, the power to annex is vested in the municipality by virtue of the direct grant of power in § 19(a)." Id.
The Hannah case concerned the question of whether the provisions of Section 71.015, RSMo, which set forth the procedures by which a city can annex land, are applicable to a constitutional charter city. Even though the case did not concern the exclusion or diminishing of territory from a city, since it concerned the power of the city to change its boundaries, the general principles set forth therein concerning the powers of a constitutional charter city are applicable to the questions presented in your request.
As shown by the above-quoted portions of the Missouri Supreme Court's holding, the critical question in regard to a constitutional charter city changing its boundaries is whether such action would contravene some provision in the city's charter, or in the state constitution or state statute.
As is our usual practice, we do not interpret city charters or ordinances. The letter from the city attorney accompanying your opinion request states only that the charter and ordinances contain "no procedure for De-Annexation of property from the Corporate boundaries of the city." He does not indicate that there is any charter provision which would prohibit or limit an action by the city to change its corporate boundaries so as to exclude previously incorporated territory from its limits. We, therefore, assume that excluding the territory in question does not contravene any provision of the city charter.
The next query is whether the proposed detachment contravenes a state constitutional provision or state statute. In this regard, we must be guided by the principles set forth by the Missouri Supreme Court in Cape Motor Lodge, Inc. v.City of Cape Girardeau, 706 S.W.2d 208 (Mo. banc 1986), which are as follows:
 "Conflicts between local enactments and state law provisions are matters of statutory construction. Once a determination of conflict between a constitutional or statutory provision and a charter or ordinance provision is made, the state law provision controls. . . . The test for determining if a conflict exists is whether the ordinance `permits what the statute prohibits' or `prohibits what the statute permits.'" [citations omitted]. Id. at 211.
Statutes granting powers to municipalities are not to be construed to limit constitutional charter cities "`unless the statute in question was so comprehensive and detailed as to indicate a clear intent that it should operate as both authorization and limitation.'" Id. at 212, quoting from Missouri Local Government at the Crossroads: Report of the Governor's Advisory Council on Local Government Law, p. 5 (1968). The court went on to hold:
 "In carrying out the intent behind section 19(a), caution should be exercised in finding that a power granted to non-home rule cities places an implied limitation on the powers derived from section 19(a), unless such an intent is clear from the constitution or statute itself." Id.
Utilizing these principles, we have found no provision in state law, either in the state constitution or state statute,[1]
which would withhold from a charter city the power to alter its boundaries in such a way as to exclude presently incorporated territory from its boundaries.
Since there is no provision in the city charter, or in the state constitution or state statutes prohibiting a constitutional charter city from altering its boundaries so as to detach from itself territory presently within its boundaries, it is the opinion of this office that the City of Fulton has the power to so alter its boundaries.
In regard to the second question requesting a description of the proper procedure to be followed, we believe that, since no procedures expressly applicable to charter cities are set forth in the state constitution or state statutes, a constitutional charter city is thereby authorized to fashion by appropriate legal enactment its own procedures. It would be inappropriate for this office to formulate these procedures for the city.
CONCLUSION
It is the opinion of this office that a constitutional charter city has the power to alter its boundaries so as to exclude territory from its corporate limits and such city is empowered to develop its own procedures to accomplish this.
Very truly yours,
 WILLIAM L. WEBSTER Attorney General
[1] Sections 71.016 to 71.019, RSMo 1986, deal with when a city "is liable to be inundated as a result of the construction of a lake, reservoir or other body of water." Section 71.016, RSMo 1986. Section 71.018, RSMo 1986, provides for the exclusion of territory from the boundaries of the city under certain circumstances. We assume these sections have no application to the question posed in your opinion request.