**CITY OF JEFFERSON, Respondent,**

v.

**Barbara J. BUESCHER, Appellant.**

**WD 79822**

Missouri Court of Appeals,
Western District.

FILED: May 2, 2017

Application for Transfer to Supreme Court Denied May 25, 2017

Audrey E. Smollen, Jefferson City, for appellant.

Bryan Wolford, California, MO, Michael Berry, Marshall Wilson and Theodore Lynch, Jefferson City, for respondent.

Before Division Four: Mark D. Pfeiffer, Chief Judge, Presiding, Lisa White Hardwick and Gary D. Witt, Judges

Lisa White Hardwick, Judge

Barbara J. Buescher appeals from the circuit court's judgment finding that she owed Jefferson City ("City") $24,785.33 for nuisance abatement actions that the City took with regard to her properties. She argues that the City does not meet the statutory requirements to collect nuisance abatement fees; the City has no statutory authority to enact ordinances for the abatement of conditions on property; the City's ordinances providing for abatement of nuisances are void because they do not require a hearing prior to the abatement; and the City's ordinances concerning weed and trash control are void because they do not provide for an automatic hearing. For reasons explained herein, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

Buescher is the owner of several properties in the City. In 2014 and 2015, the City took actions to abate nuisances on her properties, including boarding up windows and doors to secure the buildings, cutting and trimming the yards, and removing weeds and debris. After the City took these actions, the City's code enforcement division certified the costs of each action to the city clerk, who then issued a special tax bill against Buescher for each amount.

When Buescher failed to pay the special tax bills assessed against her, the City

---

1. All rule references are to Mo. R. Crim. P. (2016), unless otherwise indicated.

filed a petition. The petition asserted 21 counts[1] of Buescher's failing to pay the costs of abatement actions. During a bench trial on the petition, the City offered into evidence Chapter 21 of the City Code, which contained the City's nuisance ordinances. The City also offered the testimony of the city clerk and the certification of costs and special tax bills for each of the abatement actions for which it was seeking payment. Buescher did not offer any evidence. Following the trial, the court entered judgment in favor of the City and found that Buescher was indebted to the City for $24,785.33. Buescher appeals.

## STANDARD OF REVIEW

In this bench-tried case, we will affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We view all of evidence and inferences therefrom in the light most favorable to the judgment, disregarding any contrary evidence and inferences. *Bolt v. Giordano*, 310 S.W.3d 237, 242 (Mo. App. 2010). When, as in this case, neither party has requested that the court enter findings of fact or conclusions of law, we assume that the court resolved all factual issues in accordance with the result. *Id.* We review questions of law, which include the interpretation of municipal ordinances and the determination of whether they conflict with state law, *de novo*. *City of St. Peters v. Roeder*, 466 S.W.3d 538, 543 (Mo. banc 2015).

## ANALYSIS

In Point I, Buescher contends the circuit court erred in granting judgment in favor of the City because the requirements of Section 67.451, RSMo Cum. Supp. 2013,[2] had not been met. Section 67.451 provides, in pertinent part, "Any city in which voters have approved fees to recover costs associated with enforcement of municipal housing, property maintenance, or nuisance ordinances may issue a special tax bill against the property where such ordinance violations existed." Buescher argues that, pursuant to this language, before a city can issue a special tax bill to recover the costs of nuisance abatement, the voters must approve the recovery of such costs. Buescher asserts that the City did not obtain voter approval and, therefore, has no authority to recover abatement costs by a special tax bill.

We need not decide whether the City was required to obtain voter approval because, even if we presume that it was, Buescher presented no evidence that the City did not obtain voter approval. As the party challenging the validity of the City's ordinance allowing it to assess and recover abatement costs by issuing a special tax bill, Buescher had the burden of proving the ordinance was invalid because no election was held. "An ordinance enacted pursuant to the valid police power of a municipality is presumed valid, and the party challenging the ordinance bears the burden of proving its invalidity." *Bezayiff v. City of St. Louis*, 963 S.W.2d 225, 229 (Mo. App. 1997). Indeed, "[t]he burden is on the party contesting the ordinance to negate every conceivable basis which might support it." *Id.* Buescher did not offer any

---

**1.** The petition originally included 25 counts, but the City voluntarily dismissed four counts before trial.

**2.** All statutory references are to the Revised Statutes of Missouri 2000, as updated by the

2013 Cumulative Supplement. Several of the referenced statutes were amended in 2016, but the amendments are neither applicable nor relevant to this case.

evidence at trial on this issue and, in fact, did not even mention the issue during the trial. Accordingly, the circuit court did not err in denying Buescher's challenge to the validity of the ordinance on this basis. Point I is denied.

In Point II, Buescher contends the circuit court erred in entering judgment against her on the 13 counts that sought recovery for the cost of boarding up windows and doors to secure the buildings on her properties. She argues that the City has no authority to enact ordinances to abate these conditions, because Section 67.398.2 provides, "The governing body of any home rule city with more than four hundred thousand inhabitants and located in more than one county may enact ordinances for the abatement of a condition of any lot or land that has vacant buildings or structures open to entry." Buescher notes that the City's population is well under 400,000. She asserts that no other statute gives the City the authority to enact ordinances allowing it to abate nuisances by boarding up windows and doors on vacant buildings.

The City is a constitutional charter city. Article VI, section 19(a) of the Missouri Constitution gives charter cities:

> [A]ll powers which the general assembly ... has authority to confer upon any city, provided such powers are consistent with the constitution of this state and are not limited or denied either by charter so adopted or by statute. Such city shall, in addition to its home rule powers, have all powers conferred by law.

The intent of this provision is "to grant cities broad authority to tailor a form of government that its citizens believe will best serve their interests." *St. Louis Ass'n of Realtors v. City of Ferguson*, 499 S.W.3d 395, 398 (Mo. App. 2016). "Article VI, section 19(a) gives charter cities all powers which the general assembly has authority to confer upon any city, provided such powers are consistent with the Constitution and are not limited or denied by the city's charter or by statute." *Id.* at 398–99. Thus, "the emphasis no longer is whether a home rule city has the authority to exercise the power involved; the emphasis is whether the exercise of that power conflicts with the Missouri Constitution, state statutes or the charter itself." *Cape Motor Lodge, Inc. v. City of Cape Girardeau*, 706 S.W.2d 208, 211 (Mo. banc 1986). "The test for determining if a conflict exists is whether the ordinance 'permits what the statute prohibits' or 'prohibits what the statute permits.'" *Id.* (citations omitted). "In carrying out the intent behind section 19(a), caution should be exercised in finding that a power granted to non-home rule cities places an implied limitation on the powers derived from section 19(a), unless such an intent is clear from the constitution or statute itself." *Id.* at 212.

That Section 67.398.2 specifically provides that the governing body of a home rule city with a population of more than 400,000 that is located in more than one county *may* enact ordinances for the abatement of conditions on land with vacant buildings or structures open to entry does not mean that it prohibits or limits other charter cities' ability to enact such ordinances. There is no clear intent from the statute's language that only cities described in Section 67.398.2 have the power to abate conditions on land with vacant buildings or structures open to entry.

Moreover, we cannot imply such a limitation on the City's exercise of its police power in light of the broad authority granted to all cities under other nuisance statutes. Section 71.780 gives "cities organized under the general statutes or special charters ... the power to suppress all nuisances which are, or may be, injurious

to the health and welfare of the inhabitants of said cities[.]" Vacant buildings open to entry are injurious to the health and welfare of citizens. Section 67.400 allows "any city" to "enact orders or ordinances to provide for the ... mandatory repair and maintenance of buildings or structures within the corporate limits of the city ... which are detrimental to the health, safety or welfare of the residents and declared to be a public nuisance." Boarding up the windows and doors of vacant buildings falls within the authorization to "repair or maintain" such buildings. Section 67.410.1(5) then authorizes those cities to recover the cost of repairing or securing buildings found to be nuisances by issuing a special tax bill against the property. Article VI, section 19(a) of the Missouri Constitution granted to the City the authority conferred by these statutes to enact ordinances allowing it to board up the windows and doors of Buescher's vacant buildings and to recover the costs it expended in doing so. Point II is denied.

In Point III, Buescher contends the circuit court erred in entering judgment against her on the 13 counts that sought recovery for the costs of boarding up the windows and doors on her buildings because Section 67.410.1(4) requires the City's ordinances to automatically provide for a hearing before doing so.

Subsection 1 of Section 67.410 sets out five requirements that must be included in any ordinance enacted pursuant to Section 67.400, which is the statute that allows cities to enact ordinances that require the vacation, demolition, repair, or maintenance of structures that are nuisances. Buescher is correct that one of these requirements, contained in . Section 67.410.1(4), is that such ordinances:

> Provide that upon failure to commence work of reconditioning or demolition within the time specified or upon failure to proceed continuously with the work without unnecessary delay, the ... designated officer ... shall call and have a full and adequate hearing upon the matter, giving the affected parties at least ten days' written notice of the hearing. Any party may be represented by counsel, and all parties shall have an opportunity to be heard. After the hearings, if the evidence supports a finding that the building or structure is a nuisance or detrimental to the health, safety, or welfare of the residents of the city, ... the ... designated officer ... shall issue an order making specific findings of fact, based upon competent and substantial evidence, which shows the building or structure to be a nuisance and detrimental to the health, safety, or welfare of the residents of the city ... and ordering the building or structure to be demolished and removed, or repaired.

Section 67.410.1(4)'s hearing requirement does not apply to City, however, due to its status as a charter city. Section 67.410.3 provides that cities that are not within a county and cities with a population of 350,000 or more that are located in more than one county may enact ordinances pursuant to 67.400 and are exempt from all of Section 67.410.1's requirements. Because Section 67.410.3 gives certain cities the power to enact ordinances concerning the repair or maintenance of buildings without including Section 67.410.1's requirements, and Article VI, section 19(a) of the Missouri Constitution gives charter cities "all powers which the general assembly has authority to confer upon *any* city," *City of Ferguson*, 499 S.W.3d at 398–99 (emphasis added), the City had the power to enact its own ordinances concerning the repair or maintenance of buildings without including Section 67.410.1(4)'s hearing requirement.

Even if Section 67.410.1(4)'s hearing requirement did apply to City, we note that Section 21–8.F. of the City's ordinances automatically provides for a hearing in the following situation:

Where abatement of a nuisance may require demolition of a building or structure, or mandatory repair and maintenance of a building or structure, in order to maintain the health, safety or welfare of the residents of the city, and inadequate action has been taken to remedy the situation a full and adequate hearing shall be called and conducted regardless of whether the owner of the property has requested such a hearing.

We fail to see a meaningful distinction between Section 67.410.1(4) and Section 21–8.F. Both the statute and the ordinance provide that, where a property owner fails to take adequate action to remedy a nuisance concerning a building, a hearing must be held upon ten days' notice before the building may be demolished, repaired, or maintained.

Furthermore, there is no evidence in the record that Buescher was denied this hearing. Indeed, Buescher offered no evidence at trial regarding any hearing. The only time she mentioned a hearing was when her attorney asked the city clerk whether she "attend[s] the administrative hearings on these properties," to which the city clerk replied that she does not. It was Buescher's burden to show that she was denied a hearing or that any hearing held was insufficient. She failed to meet that burden. Point III is denied.

In Point IV, Buescher contends the circuit court erred in entering judgment against her on the seven counts that sought recovery for the costs of removing weeds and trash on her property because Section 71.285.1 requires the City's ordinances to automatically provide for a hearing on any violation of its weed and trash control ordinances. Buescher argues that the City's ordinances regarding hearings for weed and trash nuisances are insufficient because, while they allow the property owner to request a hearing within ten days of the notice to abate, they do not automatically provide for a hearing.

As we noted *supra* in Point III, however, the City's status as a charter city exempts it from statutory requirements if any cities are exempt from such requirements. *See City of Ferguson*, 499 S.W.3d at 398–99. Section 71.285.1 exempts five different classes of described cities from the statute's automatic hearing requirement "where such city, town or village establishes its own procedures for abatement of weeds or trash." Because the City, as a charter city, possesses all powers that the General Assembly could confer upon any city, it is endowed with the power of the five classes of cities that are exempt from Section 71.285.1's hearing requirement.

Moreover, Section 67.398.1 specifically provides that any city may enact ordinances to provide for the abatement of overgrown vegetation, noxious weeds, rubbish, and trash. This statute does not contain any hearing requirement and provides for the recovery of a city's abatement costs by either a special tax bill or by addition of those abatement costs to the property's annual real estate tax bill. § 67.398.3. Section 67.398 authorized the City to enact ordinances allowing it to abate the weed and trash nuisances on Buescher's properties and to recoup its costs. Point IV is denied.

### Conclusion

The judgment is affirmed.

All Concur.