JOHN BRASKO, petitioner-respondent,

*v.*

SEBASTIAN DUCHEK et al., defendants-appellants.

[Decided July 17th, 1940.]

*Mr. Charles J. Falcey,* for the petitioner-respondent.

*Mr. Joseph D. Kaplan* and *Mr. Romulus P. Rimo,* for the defendants-appellants.

BUCHANAN, VICE-ORDINARY.

This is an appeal from a decree of the Mercer Orphans Court adjudging that John Brasko is entitled to an estate in curtesy in certain premises in the city of Trenton.

On March 14th, 1927, there was enacted the statute *P. L. 1927, c. 71, p. 128,* which provides that, irrespective of the birth of issue,

"the widower * * * of any person dying * * * shall be endowed for the term of his natural life, of the one * * * equal half part of all the lands * * * whereof his wife * * * was seized of an estate of inheritance at any time during the coverture."

By its express terms this statute was not to take effect until January 1st, 1929.

On the date this statute was enacted, Anna Dilk (widow) was seized in fee of the premises aforesaid, and so continued until her death. On October 27th, 1927, (some seven months after the passage of the statute), she married John Brasko. She died February 20th, 1932 (two years after the statute took effect); still seized of the lands; survived by her said husband; without any child having been born of this marriage; and leaving a will by which she devised the lands to third parties.

The Orphans Court adjudged that the husband is entitled to curtesy under the said statute.

The crucial question involved in this appeal is whether or not the statute aforesaid, under the true intent and meaning thereof, operates to clothe a surviving husband with the new statutory right of curtesy in the lands whereof the wife dies seized, where the seizin-during-coverture commenced subsequent to the enactment of the statute but prior to the date fixed for the statute to take effect.

The appeal was argued by the parties on the theory that the controlling question is whether or not the statute is to be construed as having any force or effect during the period between the date of its enactment and the date specified for it to take effect. The contention of the appellants is that the language of the statute is future and prospective,—that it provides for the creation or arising of the new curtesy estate *thereafter;* that the statute by its express provision was to have no operation or effect until the arrival of the date for it to become effective and is to be considered as speaking only from that effective date,—so that in providing for the arising of these estates in the future, it must be deemed that the statutory meaning is for their arising *after,* and not before, the effective date of the statute; hence that the statute is to be construed as not intended to affect any rights or interests in

lands which had arisen prior to, and were already in existence at, the effective date of the statute, notwithstanding they had arisen after the enactment of the statute.

The respondent does not question that the language of the statute is future and prospective; and admits that it was not intended to affect any interests in lands which had arisen prior to the *enactment* of the statute; but contends that the legislature did intend that the statute should affect rights or interests in lands which arose *after the enactment* of the statute,—that the legislative purpose in providing the period of nearly two years before the statute should take effect, was to give notice, on the date of its enactment (to those contemplating marriage or to married persons contemplating the purchase of lands) that the new estate *would arise* on January 1st, 1939, in lands where the seizin during coverture commenced after March 14th, 1927.

The general rule is that a statute which expressly provides that it shall become effective on a certain date in the future is to be construed in the same manner as if it had been enacted on that date,—that it speaks only from the date on which it is to go into effect, and has no force or effect whatever until the·arrival of that date. *59 C. J., § 673, p. 1137; 25 R. C. L., § 27, p. 780.*

To the general rule as above stated,—that such a statute has no force or effect whatever until the arrival of the specified future date,—there are some exceptions. One is that where such a statute is passed by Congress, in a field where federal legislation is supreme though the states may validly legislate unless and until Congress has legislated, that act of Congress is effective, from the date of its enactment, to prevent validity and effectiveness of any subsequent state legislation. It has the effect that Congress has legislated in that field. *Nor. Pac. Ry. Co.* v. *Washington, 222 U. S. 370.* This exception is of no materiality in the instant case.

Another exception is,—(and it would seem that all the other adjudications which deal with apparent exceptions, are essentially examples of this same exception),—that such a statute does have the effect, immediately upon its enactment, of giving notice to all persons that the law *will be* as set forth

in the statute, on and after the specified date for it to come
into effect. The leading case on this point is *Diamond Glue
Co.* v. *U. S. Glue Co., 187 U. S. 611.* It will be noted how-
ever that in that opinion the court says, in effect, that the
giving of this notice was the only operation and effect of the
statute in question, prior to the arrival of the date set for it
to take effect; and says expressly (*p. 616,* top) that statutes
of this kind, (*i. e.,* the operation of which is suspended or
postponed by express provision until a future date), are to
be read and construed, *for the purposes of the operation which
is suspended,* as if passed on the day they go into operation
and effect.

No adjudication on this point appears heretofore to have
been made in this state; but the principles as set forth in
the *Diamond Glue Co.* case, have the sanction of logic and
common sense as well as the weight of authority, and will be
here adopted. When the legislature enacts a statute and
says "this act shall take effect on January 1st, next," the
natural and logical interpretation thereof is that it says,
"This and this will become and be the law on and after
January 1st, next." *Ergo,* it does not become, and is not,
the law,—and hence its provisions have no *operative* effect,
and are not to be construed as intending to express any such,
until that specified date.

It remains to apply these rules to the circumstances in the
instant case. We have the following situation,—a marriage
and seizin by the wife occurring in October, 1927, with notice
to the husband and wife as to what the law would become
and be on and after January 1st, 1929; the enactment on
January 1st, 1929 (so deemed for the purposes of construc-
tion) and immediately effective, of a statute providing that
thereafter the widower of any married woman thereafter
dying, shall be endowed of an estate of curtesy in the one-
half part of all the lands whereof the wife was seized at any
time during the coverture, (irrespective of the birth of issue).
We have also the further fact that, under the common law
of this state, existing and operating up until Jaunary 1st,
1929, at least, on the marriage and seizin of the wife, prior
to January 1st, 1929, there arose in the husband an interest

in the wife's lands which would ripen into an estate of curtesy consummate, in the whole of such lands, if issue were born and if the husband survived the wife,—*Hackensack Trust Co.* v. *Tracy, 86 N. J. Eq. 301, 99 Atl. Rep. 846; In re Brown, 89 N. J. Eq. 239, 104 Atl. Rep. 649; Weaver* v. *Patterson, 92 N. J. Eq. 170* (at *176*), *111 Atl. Rep. 506,—* and furthermore that that interest of possible future curtesy consummate, so arising in the husband on marriage and seizin, was an interest or right which could not constitutionally be impaired by the legislature, after it had so arisen. *Walker* v. *Bennett, 107 N. J. Eq. 151, 152 Atl. Rep. 9; Kicey* v. *Kicey, 112 N. J. Eq. 459* (at *462,* top), *164 Atl. Rep. 684;* s. c. on appeal, *\*114 N. J. Eq. 116* (at *118,* bottom), *168 Atl. Rep. 424.*

Whether or not the statute of 1927 is deemed to prevent the arising of any further common law curtesy rights from and after January 1st, 1929, it did not prevent the arising of such rights prior to that date. Under the rules of construction above mentioned and adopted, the legislature said on January 1st, 1929, and not before, "From and after this date, the surviving husband of a wife hereafter dying, shall be vested in possession of curtesy consummate in the one-half part of all lands of which the wife was seized at any time during the coverture." If we assume that it is to be deemed that it also said on that date, "No further common law curtesy rights shall hereafter arise," it nevertheless is to be deemed that it did not say so prior to that date.

Respondent argues, as has been said, that according to the proper interpretation of this statute, it is to be deemed to have said, on March 14th, 1927, "On this date, March 14th, 1927, notice is given to all persons that on and after January 1st, 1929, every surviving husband of a wife thereafter dying, whether issue has been born or not, will take an estate of curtesy in one-half of all the lands of which his wife was seized at any time during the coverture." That the statute did have the effect of giving such notice is probably true,— see the *Diamond Glue Co.* case, *supra;* at any rate we may so assume. But what is the result of that giving of that notice? The result in the *Diamond Glue Co.* case was that it

was there held that where a contract was made by and between a domestic corporation and a foreign corporation, subsequent to the enactment of statute which was not to take effect until a future date which had not yet arrived,—which statute provided that after that date certain acts by a foreign corporation should be unlawful unless certain provisions were performed by it,—the parties had notice at the execution of the contract that the statute would become law on the future date; that they must be deemed to have contemplated this fact and the contract must be interpreted accordingly; and that the statute, when the future date did arrive, was not prevented from having full force and effect upon any theory that it impaired the obligation of a contract entered into prior to its going into operation.

In the instant case, however, we have no question of any effect of the statute on any contractual rights,—none such are involved. It is true that the marriage took place after the enactment of the statute and that marriage is a contract (of a special kind); but the rights and interests in land, of the parties to the marriage, arising as the result of the marriage, are not contractual rights,—they are rights arising not from the terms of the contract but by operation of law. No right of curtesy arose in this husband by reason of any contract with his wife that it should arise; whatever rights of curtesy he became entitled to, and whatever burden or encumbrance the wife's lands became subject to, arose and occurred by operation of law. There is no question here of the interpretation of any contract or of the impairment of any right arising *ex contractu*. The question here is simply,—what are the rights (as to curtesy) that arose and resulted from this particular marriage and seizin and from the coming of this statute into operation and effect.

Since the statute was not to have, and did not have, any operative effect whatever prior to January 1st, 1929, therefore on the marriage and seizin which occurred in October, 1927, and under and by virtue of the operation of the law as then existing, the husband acquired the unimpairable right to have the common law estate of curtesy consummate if issue were born and he survived the wife; and the wife had the

full rights of ownership in the lands, subject only to this common law curtesy interest in the husband. Those rights of ownership, during her life, were of course also constitutionally protected against legislative impairment, (although her rights of disposition at death were not so protected. *Kicey* v. *Kicey, 112 N. J. Eq. 459,* at *462, 164 Atl. Rep. 684;* s. c. on appeal, \**114 N. J. Eq. 116,* at *pp. 118-119, 168 Atl. Rep. 424*). The wife's rights of ownership were *not* subject to the new statutory rights of curtesy, prior to January 1st, 1929, because the legislature (under the true interpretation of the statute of 1927, as above), had not said, and did not say, until January 1st, 1929, that they should be so subject, and on that date said, at most, only that they should *thereafter* be so subject.

Doubtless the legislature might validly have provided by the act of 1927, that as to any and every seizin during coverture occurring after the enactment of that statute, the new statutory right of curtesy should attach on January 1st, 1929. If it had so provided, and had made the statute effective immediately, doubtless the husband in the instant case would be entitled to that statutory curtesy. The difficulty is that the legislature did not so provide,—either expressly or by implication; on the contrary it provided, in effect, (as we have seen) that the common law with respect to ownership in land and to rights and estates of curtesy, should remain unchanged until January 1st, 1929, and that only on and after that date should the new provisions become and be operative.

Then on January 1st, 1929, the legislature says, (in and by the statute of 1927) "on and after this date the surviving husband of any wife who shall die on or after this date, shall have a life estate in the one-half part of all lands of which the wife was seized at any time during the coverture." Read literally, and construed according to the natural and ordinary meaning of the language used, this would, at the death of Mrs. Brasko which occurred thereafter in 1932, purport to clothe Brasko with the new statutory estate of curtesy consummate in the lands of which Mrs. Brasko *died seized,* and impose that estate on those lands, but it also, by express

terms, would purport to clothe Brasko with the same estate in any and all lands of which she *had been seized* at any time during the coverture,—irrespective of when that seizin during coverture arose, or whether or not such seizin continued to exist at her death.

So far as concerns the lands of which she died seized, it was validly within the legislative power to give to her husband, at her death, the new estate of curtesy commencing at that death. The husband, up until that death, had an unimpairable common law right of curtesy, conditional on the birth of issue (which right he had acquired as we have seen by the marriage and seizin during coverture prior to January 1st, 1929) ; but in giving to him, at the wife's death, the new statutory curtesy, there would be no *impairment* of his previous right,—that previous conditional right terminated at the same instant of her death because no issue had been born, and the new right was an increase or additional right and not an impairment. So also, there would seem to be no constitutional violation of the rights of ownership of the wife, or any rights of her devisees. The creation of the new estate in the husband, at, but not before, the instant of the wife's death and the corresponding imposition, at, but not before, that instant, of the burden or encumbrance of that new estate upon the lands of which the wife had been seized up until that instant, obviously would seem not to impair any constitutional right of ownership of the wife. She would have been free at all times prior to her death to deal with and dispose of her lands free and unencumbered by the new statutory estate; she would not be able to dispose of them by devise or intestate succession free and unencumbered by the new statutory curtesy, but as we have already seen, the impairment of previously existing rights of testamentary devise or intestate succession is entirely within the constitutional power of the legislature at any time prior to the death of the owner of the lands.

So also there would be no impairment of any vested right of any devisee or intestate successor. No such person has any right so to succeed to ownership, prior to the death of the owner; and no estate becomes vested in a devisee or heir

until that death. Since the new estate of curtesy would vest at exactly the same instant of death, it would not impair any *prior* vested interest or estate of devisee or heir. The two could perfectly validly stand together,—the husband would take the estate of curtesy and the devisee would take the fee subject to that curtesy.

On the other hand, if, and in so far as, the statute purports to impose, prior to the death of the wife, on lands acquired by her prior to January 1st, 1929, the encumbrance or burden of their being subject to the new estate of curtesy (which required no birth of issue) if she predeceases her husband, impairing her previously vested rights of ownership by preventing her from selling or conveying the same free from this new contingent or conditional burden,—the statute would clearly be unconstitutional. *Gerhardt* v. *Sullivan, 107 N. J. Eq. 374,* at *p. 378, 152 Atl. Rep. 663.*

The statute, read literally and interpreted naturally, does purport to do this latter thing. This being so, it is to be interpreted, if possible, in such manner as to avoid this meaning and effect which would be violative of constitutional prohibitions,—in such manner as to accord to it a meaning and effect which will not be thus violative,—*Road Commission* v. *Harrington Twsp., *55 N. J. Law 327, 26 Atl. Rep. 915;* or, failing in this, it must be held that the statute is invalid, inoperative and of no effect so far at least as the circumstances of the instant case are concerned.

If the question of the interpretation of the statute on this point were still open in this court, a strong argument could be made to the effect that the statute could validly impose a new estate of curtesy consummate on the lands in question at the moment of the wife's decease, since she was still seized of them at her death, notwithstanding it could not validly impose on those lands any new inchoate right of curtesy prior to her death; and that the statute could and should be interpreted accordingly.

It is deemed however that the question is no longer open in this court, but that the determination in *Gerhardt* v. *Sullivan, supra,* is controlling and dispositive of the present appeal. In that case, although it does not appear that the

court considered the possibility of the distinction just mentioned, it was squarely held that the statute *P. L. 1927, c. 68, p. 124,* amending the Dower act, is to be construed as operating "only upon lands of which the husband became seized after the act took effect," and that as to lands in which the seizin during coverture took place prior to the date the act took effect, the rights of dower were determined by the law in force prior to the taking effect of the new statute. A similar holding was made in *Riley* v. *Riley, 107 N. J. Eq. 372, 152 Atl. Rep. 665.*

While the *Gerhardt* and the *Riley* cases deal with dower instead of curtesy, the language of the two statutes is identical (*mutalis mulandis*) ; they were passed at the same time and under the same circumstances; and the principles involved are obviously the same in the case of curtesy as in the case of dower.

It results that the decree of the Orphans Court must be reversed and the record remitted to that court with direction to dismiss the petition for the admeasurement of curtesy.