Robert A. BERDELLA, Plaintiff-Appellant,

v.

Sharlie PENDER, Defendant-Respondent.

No. 73616.

Supreme Court of Missouri, En Banc.

Dec. 17, 1991.

Rehearing Denied Jan. 28, 1992.

Robert A. Berdella, pro se.

Sharlie Pender, pro se.

BENTON, Judge.

In April 1988, while criminal charges were pending against appellant Robert Berdella, he retained respondent Sharlie Pender, an attorney, to act as his agent to keep his personal financial affairs in order during his pretrial confinement. Following appellant's conviction for first degree murder, forcible sodomy, and felonious restraint, Christopher Bryson—an individual with a suit, arising from appellant's conviction, pending against appellant—filed for the appointment of a trustee pursuant to Chapter 460, RSMo 1986. This petition was granted; Frank Murphy was appointed trustee on March 16, 1989.

In November 1990, appellant filed a petition alleging legal malpractice by respondent. In January 1991, respondent filed a motion to dismiss, invoking appellant's legal incapacity under Chapter 460, RSMo Supp.1990. Appellant's suggestions in opposition to this motion claimed that the 1990 amendments to Chapter 460 effectively repealed, or nullified, the chapter or that Chapter 460 is unconstitutional. The circuit court granted respondent's motion and dismissed the case.

Appellant filed a timely notice of appeal with this Court, raising the same points filed in his suggestions in opposition to the motion to dismiss. On August 27, 1991, respondent filed a motion to dismiss on the basis that appellant had not notified the Attorney General of appellant's challenge to the constitutionality of Chapter 460.

The decision below is affirmed.

## I. The Validity of Chapter 460

Appellant insists that Chapter 460 is invalid or unconstitutional, and has filed several writs[1] in a related case requesting action against the trial judge on the basis of the unconstitutionality of Chapter 460.

In 1990, the General Assembly enacted two bills. House Bill 974 repealed all 25 sections of Chapter 460 in its entirety, and enacted no new sections equivalent to Chapter 460. Senate Bill 563 amended and reenacted two sections of Chapter 460, without mention of the other sections of Chapter 460.

### A. The Effect of the 1990 Bills

Appellant claims that, as H.B. 974 was signed by the governor twenty-six days after S.B. 563, H.B. 974's repeal of Chapter 460 should be read as also repealing the sections reenacted in S.B. 563. Appellant cites a nineteenth century court of appeals case, *Lang v. Calloway*, 68 Mo.App. 393

---

[1]. These writs are denied by separate order in accordance with this opinion.

(1897), as support for this claim. Appellant is incorrect for two reasons.

 First, to the extent that *Lang* implies a "later in time" rule for laws adopted in the same session, that decision was erroneous. The general rule in Missouri is and has been that acts adopted in the same session are to be construed in harmony, and, if they cannot be construed in harmony, then the more specific act takes precedence over the general. *See Hull v. Baumann*, 345 Mo. 159, 131 S.W.2d 721, 725 (1939); *State v. Harris*, 337 Mo. 1052, 87 S.W.2d 1026, 1029 (1936). In this case, it is clear that S.B. 563 is the more specific of the two acts—amending two sections of Chapter 460 where H.B. 974 repeals the entire chapter.

The logical underpinnings for this rule of construction are found in Article III, § 29 of the Missouri Constitution and § 1.130 RSMo 1986, and their predecessors, which create a uniform effective date for all laws passed in the same session of the legislature. Implicit in this provision is the recognition that the actual dates when the governor approves a bill or when the General Assembly passes a bill are not legally significant (except for "emergency" laws adopted in accordance with the provisions of Article III, § 29 of the Missouri Constitution).

The history of these two bills demonstrates that point. Each house passed its own bill first. H.B. 974, however, was amended by the Senate, while S.B. 563 was not amended by the House. These amendments had no connection, however, with Chapter 460. These amendments did have the effect of requiring the House to approve the amended version of H.B. 974 *after* approving S.B. 563. As the Senate passed S.B. 563 *before* the House passed the original version of H.B. 974, appellant's argument requires the assumption that approximately two-thirds of the House members changed their minds twice about the existence of §§ 460.100, 460.250 in the space of 80 days with the second change occurring within the space of two weeks after the House's passage of S.B. 563. Both bills, however, were signed by the legislative presiding officers and presented to the governor on the same date.

The effect of appellant's argument would be to give the governor a new veto power in these circumstances. Such a power would be contrary to the terms of Article III, § 31 of the Missouri Constitution and to the intent underlying that section. Thus appellant's argument is erroneous on the effect of the governor's date of approval on the validity of Chapter 460.

Under the Missouri Constitution, both S.B. 563 and H.B. 974 have the same effective date. Mo. Const. Art. III, § 29. Therefore, neither is "later in time" for the purposes of statutory construction; and *Lang* is irrelevant to the present case.

 Second, even if *Lang* were relevant, it would dictate giving effect to S.B. 563. Under *Lang*, bills passed in the same session of the General Assembly were read *in pari materia;* and a bill passed later in the same session would not be read to repeal a prior bill unless the later bill expressly repealed the prior bill or the two provisions inherently conflict. That is not the case with the two bills at issue here. H.B. 974 does not expressly repeal S.B. 563 nor is there any clear conflict between the two bills. Both S.B. 563 and H.B. 974 repeal the version of §§ 460.100 and 460.250 in effect on August 27, 1990. While H.B. 974 repeals the provisions governing appointment of a trustee for an inmate, it does not prohibit a court from using its inherent powers to appoint such a trustee. As such, H.B. 974 can be read harmoniously with S.B. 563. Therefore, H.B. 974 does not operate to repeal §§ 460.100, 460.250 RSMo.Supp.1990.

Appellant also claims that these two sections, §§ 460.100 and 460.250 RSMo.Supp. 1990, cannot legally stand alone, for lack of substance. These two sections empower the trustee of an imprisoned convict and authorize compensation for the trustee. Appellant's claim is based on the lack of specific provisions dealing with the procedures governing a Chapter 460 trustee.

 The failure of the General Assembly to enact specific procedures for the

appointment of Chapter 460 trustees is not a fatal flaw. This Court has the power to make procedural rules governing all legal matters subject only to the limitations of federal law and the Missouri Constitution. Mo. Const., Art. V, § 5. In addition, the provisions of Chapter 456 contain procedures that can apply to all trustees including Chapter 460 trustees.

### B. The Constitutionality of Chapter 460

Appellant contends, on the basis of the decision of the federal court in *Thompson v. Bond*, 421 F.Supp. 878 (W.D.Mo.1976), that Chapter 460 is unconstitutional. The decision in *Thompson* was based on the former Missouri civil death statute which prevented an inmate from suing in any court. According to the district court, that statute covered personal actions, as well as actions for the convict's estate. *Id.* at 881.

■ Chapter 460 has not come before this Court in several decades. In interpreting a statute under constitutional scrutiny, the presumption is that the General Assembly intended to, and did, enact a constitutional statute. "Statutes are presumed to be constitutional and will be found unconstitutional only if they clearly violate a constitutional provision ...; any doubt is to be resolved in favor of the law's validity." *State v. Mahurin*, 799 S.W.2d 840, 842 (Mo. banc 1990) (citations omitted). "This Court is required to construe legislative enactments so as to render them constitutional and avoid the effect of unconstitutionality, if it is reasonably possible to do so." *Simpson v. Kilcher*, 749 S.W.2d 386, 390 (Mo. banc 1988).

■ Once appointed, a trustee has the power to "prosecute and defend all actions commenced by or against such convict." Section 460.100 RSMo Supp.1990. This language does not deny a convict access to the courts for several reasons.

First, the convict, or the trustee on behalf of the convict's estate, is allowed to sue in all cases. This differs from the civil death statute in *Thompson* under which only a trustee could sue; and an inmate could not petition for the appointment of a trustee.

Second, the trustee's powers relate to the estate of the convict. The purpose of Chapter 460 is to protect creditors, and other "interested persons," from the potential squandering of an inmate's estate while the inmate was incarcerated. *See* §§ 456.-430, 460.010 RSMo 1986. Both the old and the new versions of § 460.100 limit the trustee to managing the estate of the convict. Those actions by the convict which do not affect the "estate" of the convict—like domestic relations or actions challenging the conditions of confinement or the inmate's conviction—are not subject to the provisions of Chapter 460.[2]

This distinction—between actions that relate to the estate of the convict and those that do not—creates a conditional, procedural disability. Such a limited disability is authorized by § 561.016.1 RSMo 1986, which expressly permits disabilities provided by laws such as Chapter 460.

The 1990 amendment repealed the provision specifying who can apply for the appointment of a trustee. *See* 460.010 RSMo 1986. In addition to those interested parties discussed above, an inmate may now request the appointment of a trustee when the inmate believes that the estate would be better managed by someone on the outside. This change answers a key objection in *Thompson*, the inability of the inmate to request the appointment of a trustee. 421 F.Supp. at 883. Chapter 460, however,

---

**2.** There will be cases where the division between the estate (or property) and the person of the convict is not clear. A good rule of thumb is the relief sought. If the inmate is seeking an injunction, writ, or decree that would have a direct effect on his personal status, then he has a right to file the suit and pursue it without the involvement of the trustee. If the injunction, writ, or decree would affect an inmate's property or damages are sought, then, if a trustee has been appointed, the inmate cannot sue on her own behalf; and the trustee is the only person authorized to pursue the action. There will be some actions, like divorces, that do not fit cleanly into either category in which the inmate would be allowed to sue on his own behalf but the trustee might be an interested party in any property settlement.

does not require that a trustee be appointed automatically upon incarceration.

■ The provisions of Chapter 460 do not unconstitutionally infringe on an inmate's right of access to the courts. That leaves as the only remaining question whether Chapter 460 constitutes a violation of an inmate's right to equal protection of the law. Inmates are not a suspect or quasi-suspect class and, as such, regulations affecting inmates as a class only need a rational basis. *Cf. Turner v. Safley*, 482 U.S. 78, 89–91, 107 S.Ct. 2254, 2261–63, 96 L.Ed.2d 64 (1987). Incarceration creates difficulties for an inmate seeking to protect the interests of the estate. Legislation that allows courts to appoint a trustee to protect those interests is a reasonable mechanism to alleviate some of that difficulty. An additional reason for appointing a trustee is to alleviate the difficulties imposed by an inmate's incarceration on the creditors of an inmate's estate in collecting their accounts.

As such, Chapter 460 is a valid and constitutional mechanism for handling the problems related to an inmate's estate during his incarceration.

## II. Powers of the Trustee and the Circuit Court

Other issues raised in this case are the duty owed by the trustee to the estate, the duty of the trustee to the inmate, and the role of the circuit court and the inmate in enforcing those duties.

■ An analysis of the type of trust created under Chapter 460 clarifies these issues. The traditional concern underlying Chapter 460 has been the balancing of the rights of creditors and the rights of the inmate over the estate. As such, a Chapter 460 trust contains elements of both constructive trusts and spendthrift trusts. A Chapter 460 trust resembles a constructive trust in that it is imposed to protect those with legitimate claims on the estate at the time of the inmate's incarceration. A Chapter 460 trust resembles a spendthrift trust as, while it permits the inmate some access to his estate, it prevents wasting the estate before all creditors are paid.

■ These two underlying concepts define the powers of the trustee. The trustee has a duty, under both common law concepts of fiduciary duty and the specific language of § 460.100 RSMo Supp.1990, to pursue any meritorious claims that the estate has against third parties and to present any meritorious defense against any third party, including alleged creditors. The trustee has a duty to provide money from the estate for the "support" of the inmate. The trustee has the duty to manage that estate as a "prudent person" would. This duty includes all the powers listed in § 456.520 RSMo 1986 to the extent that they are consistent with the purposes of a Chapter 460 trust.

■ The duty of the circuit court is somewhat restricted by the nature of the trust imposed on an inmate. As the purpose of the trust is to prevent an inmate from wasting the estate, it would defeat this purpose to require a full trial of every allegation raised by an inmate against a trustee. The circuit court does, however, have a duty to remove a trustee who refuses to perform his duties. *Cf.* § 456.190 RSMo 1986. As such, especially in cases where the trust was imposed on the inmate at the request of a creditor, the judge of the circuit court should examine the petition of the inmate to determine if it indicates a violation of the trustee's duty (as opposed to a mere dislike of the decisions of the trustee). Only if the petition alleges facts which constitute a violation of duty should the court require formal proceedings.

The judgment below is affirmed.

All concur.