**Mark H. LEVINSON, Appellant,**

v.

**CITY OF KANSAS CITY, et al., Respondent.**

No. WD 58205.

Missouri Court of Appeals, Western District.

Jan. 23, 2001.

Motion for Transfer to Supreme Court Denied March 27, 2001.

Application to Transfer Denied May 29, 2001.

Michael T. White, Kansas City, for appellant.

Galen P. Beaufort, Kansas City, for respondent.

Before HOLLIGER, P.J., BRECKENRIDGE and SMART, JJ.

BRECKENRIDGE, Judge.

Mark Levinson appeals from the trial court's grant of summary judgment in favor of the City of Kansas City, Missouri, and its Commissioner of Revenue, Tracy Smedley, and the denial of his cross-motion for summary judgment. Mr. Levinson contends that the trial court's summary judgment for the City was based upon its erroneous finding that the City of Kansas City had authority to increase the convention and tourism tax because the ordinance that actually imposed the tax and the date that the tax went into effect were after the effective date of the state statute authorizing the tax increase. Mr. Levinson argues that the City of Kansas City had no authority to take actions to increase the tax prior to the effective date of the state enabling statute and, thus, the City's actions were invalid. Because this court finds as a matter of law that the City of Kansas City was without authority to proceed in increasing the convention and tourism tax prior to the effective date of the enabling statute authorizing the increase, the judgment of the trial court is reversed. This case is remanded to the trial court with directions to enter summary judgment in favor of Mr. Levinson and conduct such further proceedings as are necessary and consistent with this opinion.

### Factual and Procedural Background

In 1989, the legislature enacted § 92.327.2, RSMo 1989, which authorized any "City" to impose "a tax not to exceed five and one-half percent of the amount of sales or charges for all sleeping rooms paid by the transient guests of hotels, motels and tourist courts" and a tax not to exceed one and three-fourths percent of the gross receipts from retail food sales.[1] These taxes are collectively known as the "convention and tourism tax." *Id.* In April 1990, the City of Kansas City, Missouri, began levying the five and one-half percent tax on the amount of sales or charges for

1. "City" is defined as "a constitutional charter city located in four or more counties." Section 92.325(1), RSMo 1994.

all rooms paid by the transient guests of hotels, motels and tourist courts as authorized by § 92.327, RSMo 1989. On April 27, 1999, the legislature passed Senate Committee Substitute for House Bill 35, which authorized an increase in the tax on sleeping rooms by one percent, after voter approval. The bill was signed by the governor on July 14, 1999, and became effective August 28, 1999.

Prior to the effective date of this bill, the City Council of Kansas City, on May 20, 1999, passed Ordinance No. 990314, which authorized the submission of the question of the tax increase to voters and called a special election to be held on August 3, 1999. The question submitted to voters read as follows:

> Shall the City of Kansas City be authorized to increase the convention and tourism tax from 5½ % to 6½ % on the amount of sales or charges for all rooms paid by the transient guests of hotels, motels and tourist courts after August 28, 1999, the effective date of Senate Committee Substitute for House Bill 35 passed by the First Regular Session of the 90th General Assembly of the State of Missouri.

In the August 3 election, the voters of Kansas City approved the proposition authorizing the City to increase the tax. Following the approval, on August 26, 1999, the City Council passed Committee Substitute for Ordinance No. 991076, which repealed the then existing Section 68–551 of the Code of Ordinances and replaced it with a new section, the relevant subpart reading as follows:

> (b) Beginning January 1, 2000, an increase in the convention and tourism tax authorized by subsection (a)(1) is hereby imposed by one per cent as permitted by RSMo 92.325–92.340 and in accordance with the approval of the voters of the City on August 3, 1999, as follows:
>
> (1) An additional tax of 1 percent of the amount of sales or charges for all sleeping rooms paid by the transient guests of hotels, motels and tourist courts situated within the city, and doing business within the city (excluding sales tax).

Committee Substitute for Ordinance No. 991076 became effective on September 5, 1999.

Three days later, Mr. Levinson filed a petition for declaratory judgment and injunction in the Circuit Court of Jackson County challenging the City's imposition of the increase. In his petition, Mr. Levinson claimed that the City of Kansas City could not legally hold an election to authorize an increase in the tax until after the effective date of the statute. Thus, as a transient guest of hotels in Kansas City who was obligated to pay taxes on sleeping rooms and who was adversely affected by the illegal tax increase, he requested that the trial court declare two ordinances null and void and the special election authorizing the increase null and void. The ordinances he challenged were Ordinance No. 990314, which authorized the submission of the question of the tax increase to voters, and Committee Substitute for Ordinance No. 991076, which amended § 68–551 of the City of Kansas City Code of Ordinances and provided for the tax increase to begin January 1, 2000. Finally, he requested that the trial court enjoin the City from assessing and collecting the additional one percent tax.

The City filed its answer to the petition denying that the tax was unlawful and, as an affirmative defense, alleged that Mr. Levinson failed to state a claim upon which relief could be granted. This defense was based upon the City's assertions that the ordinance that actually imposed the tax became effective eight days after the state enabling statute became effective and that

imposition of the tax was delayed until January 1, 2000, over four months after the statute's effective date.

The City subsequently filed a motion for summary judgment in which it argued, once again, that the ordinance imposing the tax and the actual increase did not take effect until after the effective date of the enabling statute. Mr. Levinson then filed his response and a cross-motion for summary judgment in which he argued that the City's actions in passing the two ordinances and holding the special election were without authority and, thus, null and void. On December 23, 1999, the trial court entered summary judgment in favor of the City, denying Mr. Levinson's motion. The court found that because the ordinance that actually imposed the additional one percent tax became effective after the effective date of the enabling statute, the City "clearly had the authority to impose the additional 1% Tax on September 5, 1999, when the ordinance became effective, as well as on January 1, 2000, when the tax actually begins to be imposed pursuant to the ordinance." The court refused to invalidate the election, stating that the irregularities in the election were "[a]t best ... 'mere non-essential irregularities.'" Mr. Levinson appeals the trial court's summary judgment in favor of the City and Ms. Smedley.

### Standard of Review

This court will review an appeal from a trial court's entry of summary judgment *de novo,* viewing "the record in the light most favorable to the party against whom judgment was entered." *ITT Commercial Finance Corporation v. Mid-America Marine Supply Corporation,* 854 S.W.2d 371, 376 (Mo. banc 1993); Rule 74.04. The trial court's decision will be affirmed if "there are no genuine issues of material fact and ... the movant is entitled to judgment as a matter of law." *Id.* at 377. Yet, this court "need not defer to the trial court's order granting summary judgment." *Id.* at 376. To be entitled to summary judgment, the movant must "show a right to judgment flowing from facts about which there is no genuine dispute." *Id.* at 378.

Because the City was the defending party in this case, the City was entitled to summary judgment if it established any one of the following:

> (1) facts that negate any one of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements, or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense.

*Id.* at 381.

### A Statute Has No Legal Effect Prior to Its Effective Date

In addressing whether the City may act in anticipation of the enabling statute's effective date, this court must determine what legal effect the enabling statute, § 92.327, RSMo Cum.Supp.1999, had prior to its effective date that would permit such action. 82 C.J.S. *Statutes* § 388 (1999) provides that "[a] statute has no force whatever until its effective date." After it is "signed by the governor, it becomes a law in the sense that it may not be changed or modified by the courts." *Id.* The effective date, however, causes the bill to be "operative as existing law." *Id.* The purpose for delaying a statute's effective date is to give the public notice of the changes. *See Todd v. Smith,* 267 Ill. App.3d 699, 205 Ill.Dec. 13, 642 N.E.2d

878, 880 (1994); *Brasko v. Duchek,* 127 N.J. Eq. 567, 14 A.2d 477, 478–79 (N.J.Prerog.Ct.1940). Furthermore, "[w]here the legislature passes an act to amend a statute then existing, the latter remains in full force during the interval between passage of the amendatory act and the time when it becomes effective." 82 C.J.S. *Statutes* § 388.

The effective dates of statutes were generally addressed by the Supreme Court in *Berdella v. Pender,* 821 S.W.2d 846, 848 (Mo. banc 1991). In *Berdella,* the Court stated that Article III, § 29 of the Missouri Constitution and § 1.130, RSMo 1986, "create a uniform effective date for all laws passed in the same session of the legislature." *Id.* at 849. The court continued that "[i]mplicit in this provision is the recognition that the actual dates when the governor approves a bill or when the General Assembly passes a bill are not legally significant (except for 'emergency' laws adopted in accordance with the provisions of Article III, § 29 of the Missouri Constitution)." *Id.* Thus, in resolving the issue before the Court in *Berdella,* the Court provided some insight into the relevance attached to the signature of the governor and the passage of a bill by the General Assembly—that neither has any legal effect except with respect to emergency legislation. *See id.*

Therefore, while "[a] statute may have a potential existence" before its effective date, "no rights may be acquired under it and no one is bound to regulate his or her conduct according to its terms, and all acts purporting to have been done under it prior to that time are void." 82 C.J.S. *Statutes* § 388. This principle was illustrated in *State ex rel. City of Charleston v. Holman,* 355 S.W.2d 946 (Mo. banc 1962). In *Holman,* the legislature passed an enabling act implementing a constitutional amendment authorizing cities to issue general obligation bonds for industrial development. *Id.* at 947–48. The enabling act contained an emergency clause providing that the act became effective upon its passage. *Id.* at 948. The City of Charleston then enacted an ordinance approving an industrial development project, held an election in which it submitted to the voters a proposition to authorize the city to issue bonds to pay for the project and, after the voters approved the proposal, enacted an ordinance issuing the bonds. *Id.* at 948–49.

The Supreme Court found, however, that the emergency clause of the enabling act was invalid. *Id.* at 951–52. Therefore, the enabling act's effective date was 90 days from the date of adjournment of the legislative session and not the date it was signed by the Governor. *Id.* at 950. As a result, the Court held that all of the city's actions taken prior to the expiration of 90 days from the date the act was signed were without authority of law. *Id.*

Similarly, in *Kennelly v. Lowery,* 64 Cal. App.2d 903, 149 P.2d 476 (1944), the California Court of Appeals addressed a situation in which actions were taken prior to the effective date of a statute. Specifically, the superior court had hired an employee prior to the effective date of a statute authorizing the court to do so. *Id.* at 476. The employee then sued to obtain compensation for work he completed after the statute became effective. *Id.* In rejecting his claim, the court held "that a statute has no force whatever until the date it takes effect; that until the time arrives when it is to become effective the statute is inoperative for any purpose and all acts purporting to have been done under it prior to its effective date are void." *Id.* Thus, even though the employee sought compensation for work done after the statute authorizing his position became effective, the superior court had hired him prior to its having the

authority to do so, and thus his hiring was a nullity. *Id.* at 477.

In an attempt to save the validity of its actions in this case, the City advances an argument based upon legislative intent. The City claims that if it was required to wait until after the August 28, 1999, effective date before it could take any action, then the imposition of the tax increase would have been unreasonably delayed. The City asserts that the first time the question could have been submitted to voters would have been February 8, 2000, because of the notice requirements to election authorities and the statutorily available dates for elections. The City argues that the intent of the Missouri General Assembly was to permit the City to impose the tax increase as soon after the state legislation became effective as the City wished. It further argues that there was no expression of an intent by the General Assembly to make the City wait until at least February 8, 2000, before it could first impose the additional one percent tax. The City does not rely on any language in the statute to support its assertion that the intent of the General Assembly was to allow the City to impose the tax at or prior to a certain date.

The statute at issue is an enabling statute passed to authorize an increase in the convention and tourism tax upon approval by the voters of the City. The Missouri Constitution provides that all statutes, except appropriation acts and emergency provisions, are to take effect "ninety days after the adjournment of the session...." Mo. Const. art. 3, § 29. Senate Committee Substitute for House Bill 35 contained no provision that would have allowed it to take effect at an earlier date. The City provides no basis upon which it should be allowed to circumvent the normal process in order to collect the taxes at the earliest possible date. There are means by which certain of these limitations can be bypassed. Article III, § 29 of the Missouri Constitution provides that the General Assembly may designate a different effective date in cases of emergency. This case did not involve an emergency situation and was not designated as such.

In this case, like in *Holman* and *Kennelly,* the actions by the City in passing the ordinance and in holding the election occurred prior to the statute's effective date. This court has found no authority, nor has the City provided any, that supports a position that the statute had a legal effect upon which the City could have operated prior to the statute's effective date. The general principles with respect to effective dates and the *Berdella* case support the position that the passage of the bill by the General Assembly and its signature by the Governor did not operate to give effect to the new statute. Thus, the passage of Senate Committee Substitute for House Bill 35 did not authorize the actions of the City in passing the ordinance and holding the election.

**Statute in Effect at Time of City's Actions Governs**

Since the new statute had no effect at the time of the ordinance authorizing the election and at the time of the election, the prior version of the statute, § 92.327, RSMo 1994, governs. When Ordinance No. 990314 was passed, which authorized holding a special election to place the issue before voters, and when the August 3, 1999, election occurred, § 92.327, RSMo 1994, only authorized the City to submit a proposition to voters for "[a] tax not to exceed five and one-half percent...." Here, the ordinance authorizing the election and the proposition presented to voters concerned a tax of six and one-half percent. There appears to be a conflict between the ordinance and the statute.

The Court in *Cape Motor Lodge, Inc. v. City of Cape Girardeau,* 706 S.W.2d 208, 211 (Mo. banc 1986), outlined the test that must be applied in determining whether an ordinance and statute conflict. This test asks "whether the ordinance 'permits what the statute prohibits or prohibits what the statute permits.'" *Id.* (quoting *Page Western, Inc. v. Community Fire Protection Dist.,* 636 S.W.2d 65, 67 (Mo. banc 1982)).

*Cape Motor Lodge* involved an appeal from a grant of summary judgment in which the trial court had found that the City was without authority to enter into a cooperative agreement with the Board of Regents of Southeast Missouri State University. *Id.* at 209. In reversing the lower court's ruling, the Supreme Court noted that under Art. VI, § 19(a), passed in 1971, "the emphasis no longer is whether a home rule city has the authority to exercise the power involved; the emphasis is whether the exercise of that power conflicts with the Missouri Constitution, state statutes or the charter itself." *Id.* at 211. Where a conflict exists "between a constitutional or statutory provision and a charter or ordinance provision ... the state law provision controls." *Id.*

The Court in *Cape Motor Lodge* found that there was no "express[ ] inconsisten[cy], nor ... irreconcilable conflict" between the ordinance allowing the city manager to enter into an agreement with the university and the constitutional and statutory provisions stating with whom a city may " 'contract and cooperate[.]' " *Id.* at 211–212 (quoting Mo. Const. art. VI, § 16 and § 70.220, RSMo 1978). The court noted that none of the provisions were "written in the form of a prohibition or limitation." *Id.* at 212. Thus, the ordinance "d[id] not expressly prohibit what the state law provisions permit[ted]; nor d[id] [the constitutional and statutory provisions] expressly prohibit what the ordinance permits." *Id.*

Here, § 92.327, RSMo 1994, limited the amount of tax the City could impose to five and one-half percent. The ordinance and election authorized a tax in excess of that limitation. Thus, the ordinance and election expressly permitted what the statute prohibited. *See id.* at 212.

In arguing that the ordinance and election were valid, the City claims that "[t]hen existing § 92.327.1(1) did not limit the City's authority or power to submit a question or proposition to its electorate asking them if they would authorize the City Council to impose an additional 1% tax after the effective date of a recently passed piece of state legislation." In fact, at oral arguments, the City argued that under its charter, it could submit any question to voters. The City also focuses on the term "may" used in § 92.327.1, RSMo 1994, ("[a]ny city may submit a proposition to the voters of such city"), stating that it is a permissive term and the "test for the powers of a Missouri constitutional charter city ... is whether an ordinance permits what a state statute prohibits or whether an ordinance prohibits what a state statue permits." The City's logic is flawed on several grounds.

The City is correct in calling the statute a permissive statute, but its interpretation of the permissiveness element is faulty. The term "may" as used in this statute grants the City authority to present to voters a proposition that would establish, or under the amendment increase, the convention and tourism tax. *See e.g., Trantina v. Board of Trustees of Fire. Retire. Sys. of St. Louis,* 503 S.W.2d 148, 151–52 (Mo.App.1973) (discussing the difference between permissive and mandatory statutes). The City is not required to submit the proposition to voters, but may

do so within its discretion. *See id.* at 151. Section 92.327.1, RSMo 1994, provides the authority upon which the City may act. *See id.* at 152. If the City does not submit the proposition to voters, the tax will not be implemented or increased. *Id.*

Because this is a permissive enabling statute, it is without effect until it is acted upon by ordinance. "The statute is the authority; but equally important is the adoption by the City of an ordinance as the rule for implementing and accomplishing the purpose of the statute. The ordinance is the mechanism by which the enabling statute takes effect." *Id.* Once a city chooses to act pursuant to an enabling statute, "it must comply with the provisions of the enabling statute which is in effect at the time the ordinance was adopted." *Id.* If it does not act according to the enabling statute then in effect, "the ordinance will be in conflict with the provisions of the statute and thereby void." *Id.*

The effect of the ordinance being in violation of the state statute is that the ordinance is "void and unenforceable *ab initio.*" *Armco Steel v. City of Kansas City,* 883 S.W.2d 3, 7 (Mo. banc 1994). In *Armco Steel,* the Court found that city ordinances imposing a license fee on natural gas consumers violated a statute in effect at the time the ordinances were enacted. *Id.* at 6. One of the ordinances had been approved by the voters of Kansas City, and the other ordinance was subsequently enacted to adopt "regulations pertaining to the imposition and enforcement and collection of the licensing fee" under the previous ordinance. *Id.* at 4. The Supreme Court found that the ordinances were invalid "because of the limitations placed on the City's authority" under § 71.610, RSMo 1986, a statute in effect at the time of the enactment of the ordinances. *Id.* at 5. Although another statute was subsequently amended to exclude charter cities like Kansas City from the limitations contained in § 71.610, RSMo 1986, the amendment to that statute did not occur until after the statutes were enacted. *Id.* at 6. Thus, the Court held that "the prohibition of § 71.610 control[led]," stating that:

> The effect of that prohibition is that the ordinances were void and unenforceable *ab initio*—at the time of enactment. Nor were the ordinances validated or ratified by the 1992 amendment of § 92.045. In an analogous context, this Court has stated that an unconstitutional statute "is not validated by a subsequent constitutional amendment, except, possibly, where the later ratifies or confirms it ..." Without express ratification and confirmation, the statute must be reenacted. This rule is equally applicable to an ordinance that was prohibited by a statutory provision at the time of its enactment.

*Id.* at 7 (citations omitted).

Without express ratification and confirmation by the revised statute of prior acts taken in accordance, the ordinance must be reenacted after the effective date of the revised statute, for it was prohibited by statutory provisions at the time of its original enactment. *See id.* Here, Senate Committee Substitute for House Bill 35 did not expressly ratify or confirm the City's actions in this case. The bill authorized and allowed the City's submission of the proposition to voters concerning the increase from five and one-half percent to six and one-half percent. By the effective date of the statute, the City had already completed the steps that the enabling statute was authorizing it to do. Black's Law Dictionary 546 (7th ed.1999) defines "enabling statute" as "a law that permits what was previously prohibited or that creates new powers." Senate Committee Substitute for House Bill 35 did not merely

authorize the one percent increase, but authorized the submission of the proposition to voters. Prior to the effective date of the statute, the City was prohibited from submitting the proposition of a convention and tourism tax to voters that exceeded five and one-half percent. Therefore, this court holds that Ordinance No. 990314 and the August 3, 1999, election were void since the City's actions were without authority of law.

In so holding, this court recognizes the general unwillingness of courts to invalidate elections and to disenfranchise the voters of Kansas City. Yet this decision is not based upon technical irregularities involved in the election process, but is based upon an election that authorized an action by the City that was prohibited by law at the time of the election. As the City "was without authority to place this issue on the ballot," "the election is void." *O'Reilly v. City of Hazelwood,* 850 S.W.2d 96, 100 (Mo. banc 1993) (finding that statute authorizing the creation of a boundary commission was unconstitutional and thus act of the commission in placing the issue of annexation before voters was without authority and the election was void).

**Passage of Ordinance Imposing Increase Did Not Save Ordinance Authorizing Election and Election**

Having reviewed the validity of the first ordinance and the election, our inquiry turns to Committee Substitute for Ordinance No. 991076. The City's primary basis for arguing that the ordinances and election were valid is that the effective date of the ordinance imposing the tax increase occurred after the effective date of the enabling statute and the increase did not begin until January 1, 2000, more than four months after the state legislation became effective. This argument is unpersuasive and does not change the validity of the original ordinance and election.

In order for the ordinance imposing the tax increase to be effective, the City must submit the proposal to voters as required by § 92.329, RSMo 1994. Having found that the ordinance authorizing the election and the election were void, the City has not complied with this provision and the ordinance has no effect. "The consent of the people applies only to legal conditions existing at the date of the election." 64A C.J.S. *Municipal Corporations* § 1735 (1999). Section 92.327.1, RSMo Cum.Supp.1999, does not merely authorize an increase. Submission of the issue to voters is a key element to the convention and tourism tax. Under the Hancock Amendment, any tax increase by a local government must be submitted to the voters for approval. Mo. Const. art. X, § 22(a). Therefore, § 92.329, RSMo 1994, requires voter approval for implementation of the convention and tourism tax. This section reads as follows:

> The governing body of any city may, by adopting an ordinance, impose the convention and tourism tax, but no ordinance enacted pursuant to the authority granted by the provisions of sections 92.325 to 92.340 shall be effective unless the governing body of the city submits to the voters of the city at a citywide general or primary election or at a special election called for that purpose, a proposal to authorize the governing body of the city to impose the convention and tourism tax.

The section states that the City may adopt an ordinance imposing the tax, but the ordinance shall not be "effective unless ... the city *submits* ... a proposal to authorize" the imposition of the tax. (Emphasis added). The statute does not say unless the city has submitted or has been previously granted authority. This read-

ing of the statute is supported by the language of § 92.332, RSMo 1994, which states that "[i]n the event that a majority of the qualified voters voting on such proposition in such city at such election approve the proposition, then the ordinance shall be in effect." This section does not contemplate the necessity of passing a second ordinance after the election because the first was done prior to the effective date of the statute. Furthermore, § 92.331, RSMo 1994, prescribes the form that a proposition shall take:

> Shall a convention and tourism tax of .......... percent on the amount of sales or charges for all rooms paid by the transient guests of hotels, motels and tourist courts and ........... percent on the gross receipts derived from the retail sales of food at a food establishment be levied in the city of .......... to provide funds for the promotion of convention and tourism?
>
> Yes No

The question submitted to Kansas City voters pursuant to Ordinance No. 990314, reads as follows:

> Shall the City of Kansas City be authorized to increase the convention and tourism tax from 5½% to 6½% on the amount of sales or charges for all rooms paid by the transient guests of hotels, motels and tourist courts after August 28, 1999, the effective date of Senate Committee Substitute for House Bill 35 passed by the First Regular Session of the 90th General Assembly of the State of Missouri?
>
> Yes No

What is clear from the language of the proposition submitted to the voters of Kansas City is that the City could not follow the form of § 92.331, RSMo 1994, because it was acting in a manner not contemplated by the General Assembly or authorized by the statute. Thus, § 92.329, RSMo 1994, operates to hold Committee Substitute for Ordinance No. 991076 ineffective.

Having found that the first ordinance and the election were null and void, this court finds that the second ordinance was ineffective to impose the increase in the tax since it did not comply with the statutory requirements. Thus, this court does not need to consider the significance of the fact that the second ordinance's effective date was after the effective date of the enabling statute.

### Status as Constitutional Charter City Does Not Give City Authority to Act

The City alternatively asserts that, even though its actions were not authorized by the statute, an independent basis of authority existed under which the City could act. The City argues that it had authority to submit the issue to voters under its powers as a constitutional charter city pursuant to art. VI, Section 19(a). The City claims that it has expansive powers-all the powers of the State-that are not limited or denied by the Constitution.

The City appears to be arguing that the submission of the question was outside the confines of the statute and within their general ability as a charter city to submit questions to voters. The City asserts that § 92.327.1(1), RSMo, did not prohibit them from submitting a question to voters asking whether they would authorize an increase after the effective date of the enabling statute. While the powers conferred upon a constitutional charter city are broad, they are not without limitation. *Armco Steel,* 883 S.W.2d at 5. As this court has already held that Ordinance No. 990314 and August 3 vote were in direct conflict with § 92.327, RSMo 1994, so those actions by the City were invalid. The City's status as a char-

ter city does not provide an alternative avenue of authorization that would have allowed it to present a question to voters concerning a matter that is expressly prohibited by statute. *Cape Motor Lodge,* 706 S.W.2d at 211.

## Conclusion

The actions of the City of Kansas City in passing Ordinance No. 990314 authorizing the submission to voters of the proposal to increase the convention and tourism tax by one percent to six and one-half percent and the August 3, 1999, election authorizing the City to increase the tax occurred prior to the effective date of the enabling statute. Because a statute has no legal effect until its effective date, the prior version of the statute, which limited the amount of the tax to five and one-half percent, governs. Thus, the ordinance and election were contrary to existing law and the City was without authority to act. The ordinance and election are void *ab initio.* Likewise, Committee Substitute for Ordinance No. 991076, which amended § 68–551 of the City of Kansas City Code of Ordinances and provided for the tax increase to begin January 1, 2000, did not conform to the requirements of § 92.325 et seq. This court finds no legal basis for the actions of the City taken prior to the effective date of the statute. Therefore, the trial court improperly granted summary judgment in its favor.

The judgment of the trial court is reversed. Because there are no disputed facts, we remand to the circuit court with directions to enter summary judgment in favor of Mr. Levinson on the declaratory judgment count. *Dalton Investments, Inc. v. Nooney Co.,* 10 S.W.3d 590, 594 (Mo. App.2000). On remand, the circuit court is directed to conduct such further proceedings as are necessary and consistent with this opinion.

All concur.