CITY OF HARRISONVILLE,
Missouri, Appellant,

v.

PUBLIC WATER SUPPLY DISTRICT
NO. 9, Respondent.

No. WD 62443.

Missouri Court of Appeals,
Western District.

March 16, 2004.

Steven E. Mauer, Kansas City, MO, for Appellant.

Elvin S. Douglas, Jr., Harrisonville, MO, for Respondent.

Before VICTOR C. HOWARD, P.J., HAROLD L. LOWENSTEIN, and JAMES M. SMART, JR., JJ.

JAMES M. SMART, JR., Judge.

In 1998, the City of Harrisonville ("City") annexed some territory within the boundaries of Public Water Supply District No. 9 ("Water District") in Cass County. Both the City and the Water District wished to serve the land in question with water. The City brought an action in 2001 to detach the land from the boundaries of the Water District so that the City could provide water service to the area. The City's action was brought pursuant to section 247.165, RSMo 2000. The Water District contended the statute was not applicable because the annexation in question did not fit within the applicable statutory provisions. The Water District moved for summary judgment on that basis. The trial court granted the Water District's motion for summary judgment. The City appeals. We affirm.

Section 247.165 was enacted in 2001 to provide a procedure for a resolution of the conflict between water districts and cities as to the provision of water service to residents of a city's newly annexed territory within an existing water district. The statutory procedure provided in section 247.165 can ultimately result in detachment of the territory from the district, with water service supplied by the city. The new statutory procedure was applicable to territory annexed by a city after January 1, 1996. *See* Section 247.165, RSMo 2000. The statute, however, is not applicable to territory annexed by a city in a first class county with a population of more than 63,800 but less than 70,000, unless the annexation has occurred between January 1, 1999, and August 28, 2001.[1] The territory in question in this case was annexed January 12, 1998.

The issue before the trial court was whether section 247.165 is applicable to the territory in question. If it is applicable, then the City must be allowed to proceed under the statute toward possible detachment of the territory from the district. If it is not applicable, the City's action should be dismissed as a matter of law.

The City contends the statute is applicable because the population of Cass County exceeded 70,000 under the 2000 decennial census at the time the governor signed the bill into law. Thus, the City argues, the trial court erred in determining that the statute does not apply. The Water District argues that the trial court correctly applied the law in that the pertinent time for determining the applicable population

---

1. Cass County, with a 1990 decennial census of 63,808, was a first class county without a charter form of government with a population of more than 63,800 but less than 70,000.

The 1990 decennial census was applicable at the time the bill was pending and at the time the bill was passed by the General Assembly.

is not the date the bill was signed by the governor but rather the date the law was passed by the General Assembly.

Section 1.100 states in relevant part:

2. Any law which is limited in its operation to counties, cities, or other political subdivisions having a specified population or a specified assessed valuation shall be deemed to include all counties, cities or political subdivision which thereafter acquire such population or assessed valuation as well as those in that category **at the time the law passed**.

(emphasis added). The trial court stated its reasoning as follows:

The Missouri Court of Appeals, Western District discussed when a statute has legal effect in *Levinson v. City of Kansas City*, 43 S.W.3d 312 (Mo.App. W.D.2001). Writing for the Court, Judge Breckenridge discussed the distinctions of when a bill is passed by the general assembly, when the governor signs a bill, and when the bill become effective under the law. "A statute has no force whatever until its effective date." *Id.* at 316–317.

The Missouri Supreme Court addressed the effective dates of statutes in *Berdella v. Pender*, 821 S.W.2d 846, 848 (Mo. banc 1991). The Court found that Article III, § 29 of the Missouri Constitution and § 1.130 RSMo 1986 created a uniform effective date for all laws passed by legislature. The Supreme Court held that "implicit in this provision is the recognition that the actual dates when the governor approves a bill or when the general assembly passes a bill are not legally significant (except for 'emergency' laws adopted in accordance with the provisions of Article III, § 29 of the Missouri Constitution)." *Id.* at 849.

The Missouri Supreme Court also addressed the issues of passage by the general assembly and the effective date of legislation in *State ex rel. Moore v. Toberman*, 363 Mo. 245, 250 S.W.2d 701 (1952). In discussing the process under Article III, § 29 the Court noted that under the Missouri Constitution, all statutes except appropriation acts and emergency provisions, are to take effect ninety days after the adjournment of the session. The Court held that only the general assembly passes a law. "When it has passed a bill, if that word is preferred, the bill is law insofar as the legislative power is vested in the general assembly to make it so...." *Id.* at 704. The Court distinguished between laws passed by the general assembly and laws passed and approved by the governor. *Id.*

This Court notes that cases which have interpreted when a law is passed under Article III, § 29 of the Missouri Constitution ("No law passed by the general assembly....") and § 1.130 RSMo ("A law passed by the general assembly takes effect ninety days after adjournment of the session....") have found that a law is passed when it receives final approval from the general assembly. Applying the same rationale as both the Missouri Supreme Court did in *Berdella* and *State ex rel Moore*, as well as the Missouri Court of Appeals, Western District in *Levinson*, and upon the plain language of the statute, this Court finds that the term "at the time the law passed" in § 1.100 means at the time final passage occurs before the general assembly. To hold otherwise would fail to recognize the distinctions placed upon the passage of law by the general assembly, its approval by the governor, and its effective date by operation of the Missouri Constitution and § 1.130.

The trial court ruled the statute inapplicable, granting summary judgment to the Water District. An order granting summary judgment is reviewed *de novo*. The propriety of summary judgment is purely an issue of law, and an appellate court need not defer to the trial court's order granting summary judgment. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993).

In its first point relied on, the City argues that the court erred in failing to note the legal distinction between the phrase at issue ("law passed") and the phrase relied on by the trial court ("law passed by the General Assembly"), and in failing to recognize that the legislature's use of different terms is presumed to be intentional and for a particular purpose. The City points out there is a distinction between the enrollment of a bill (in this case the date of enrollment being May 11, 2001) and the enactment of a bill into law (in this case July 2, 2001). The City claims that Senate Bill 267 was not a "law" until approved and signed by the governor. *See, e.g., Nichols v. Robinson*, 277 Mo. 483, 211 S.W. 11, 13 (1919).

The City also points out that the purpose of section 1.100 is to ensure a stable and accurate source of population data for calculation purposes in Missouri statutes, citing *Poertner v. Hess*, 646 S.W.2d 753, 756 (Mo. banc 1983). The City notes that Senate Bill 267 (which became 247.165) originated in the 2001 legislative session and suggests that the General Assembly would at that time have had the results of the 2000 census.

The City also argues that on some occasions, the legislature, in referring to a law passed, chose to add the words "by the general assembly." *See, e.g.,* Mo. CONST. art. X, § 18(e) ("laws passed by the general assembly ..."); § 1.130 ("a law passed by the general assembly takes effect ...."). The City argues that, in contrast, the General Assembly omitted the language "by the general assembly" in section 1.100. The use of the different terms is presumed to be intentional and purposeful, argues the City, citing *Armco Steel v. City of Kansas City*, 883 S.W.2d 3, 7 (Mo. banc 1994).

The City also argues that in *State ex rel. Moore v. Toberman*, 363 Mo. 245, 250 S.W.2d 701, 706 (1952), the Court refers to *Nichols v. Robinson*, 277 Mo. 483, 211 S.W. 11, 13 (1919), noting that the court in *Nichols* stated that the phrase "after its passage" meant after the signature and approval of the governor. The City also points out that section 1.100 was originally adopted in 1939, and amended in 1957—five years after *Moore*—without the legislature adopting any change in the phrase "law passed" in 1.100. The City suggests that the legislature must have had in mind that the governor's signature is still required to have a "law passed."

The Water District, in response, takes issue with the City's points, beginning with the City's interpretation of *Moore*, pointing out that in *Moore* the Court found the phrase "at the time the law passed" in section 1.100 to mean the time of final passage in the General Assembly. 250 S.W.2d at 704. We agree with the trial court that *Moore* is more helpful to the Water District. In *Moore* the court said:

> The phrases "law passed by the general assembly" and "laws previously passed," as used in § 29, cannot be limited to laws passed by the general assembly *and approved by the governor*. The governor is no part of the general assembly. The Constitution, § 1, Art. III, expressly states: "The legislative power shall be vested in a senate and house of representatives to be styled "The General Assembly of the State of Missouri."

Thus, only the General assembly *passes* laws. When it has passed a *bill*, if that word is preferred, the bill is a *law* insofar as the legislative power is vested in the General Assembly to make it so; and we think that is the clearly intended meaning of the word "law" as used in the aforesaid phrases of § 29.

*Id.* The court in *Moore* thus made the point that there is a large distinction between "law passed by the general assembly" and "law passed by the general assembly and approved by the governor." *Id.* We think this weakens the City's argument that the phrase "law passed" really means "law passed by the general assembly and signed by the governor." At the same time, it strengthens the argument that in section 1.100, the legislature meant "law passed by the general assembly." Although the governor has certain powers to oppose proposed legislation, the legislative power is vested only in the General Assembly. Mo. CONST. art. III, § 1. Thus, the governor does not possess power to "pass" a law.

We also think it is likely that in section 1.100 the legislature has in mind the application of the census figures in effect at the time of final passage by the General Assembly. Although the governor's action or inaction is certainly important, we agree with the trial court that the General Assembly would have regarded the *date* of the governor's action or inaction, or the expiration of time to act, to be immaterial. Generally, the effective date of a law is ninety days after the adjournment of the session, irrespective of when the bill was signed by the governor, or when the time expired for the governor to return the bill. See Mo. CONST. art. III, § 29.

We agree with the Water District's arguments and with the reasoning of the trial court. While in some other case the language difference in the two phrases could be purposeful, in this case we conclude there was no purposeful distinction. For all these reasons, the trial court did not err in its determination that section 247.165 did not apply.

In Point II, the City contends that the court erred in that it permitted the Water District to submit new arguments and materials subsequent to briefing on the summary judgment motion, and relied on the new materials (in which the Water District made an argument based on separation of powers) in issuing its opinion. The City regards the supplemental materials and arguments filed by the Water District as essentially amounting to a new ground for summary judgment. The City argues the court cannot base its ruling on a new ground without beginning the process over with a new motion for summary judgment, citing *New Prime, Inc. v. Professional Logistics Management Co.*, 28 S.W.3d 898 (Mo.App.2000), and *Cross v. Drury Inns, Inc.*, 32 S.W.3d 632 (Mo.App.2000).

The Water District responds that no error was committed here because any supplemental submission did not change the issue before the court. We agree. The issue before the court at all times was the meaning in this context of the phrase "law passed." There was one issue, and the court could consider whatever legal arguments and authorities it wished on that issue. The trial court did considerable scholarly research on its own, and in its judgment, it cited cases that neither party relied upon in the trial court. Point II is without merit.

### Conclusion

The judgment is affirmed.

HOWARD and LOWENSTEIN, JJ., concur.